Judge BAKER
delivered the opinion of the Court.
After a contested general court-martial before members, Appellant, a recruiter, was convicted of a variety of offenses relating to inappropriate and unprofessional conduct with prospective applicants. The findings of guilt included four specifications of violating a lawful general regulation, one specification of maltreatment, and two specifications of assault, in violation of Articles 92, 93, and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 893, and 928 (2000), respectively. The adjudged and approved sentence included a bad-conduct discharge, confinement for fifteen months, forfeiture of all pay and allowances and reduction to airman basic (E-l). The United States Air Force Court of Criminal Appeals affirmed in an unpublished decision. United States v. Pope, No. ACM 34921, 2004 CCA LEXIS 204, 2004 WL 1933210 (A.F.Ct.Crim.App. Aug. 30, 2004). We granted review of the following three issues upon Appellant’s petition:
I. WHETHER THE EVIDENCE WAS LEGALLY SUFFICIENT TO CONVICT APPELLANT OF SPECIFICATIONS 2, 3, AND 4 OF CHARGE I (VIOLATION OF A DIRECTIVE PROHIBITING SEXUAL HARASSMENT) BEYOND A REASONABLE DOUBT.
II. WHETHER AIR EDUCATION AND TRAINING INSTRUCTION 36-2002, PARA. U.2.2.5. (PROHIBITING INAPPROPRIATE CONDUCT AND UNPROFESSIONAL RELATIONSHIPS) BOTH FACIALLY AND AS APPLIED TO APPELLANT VIOLATES DUE PROCESS AND IS UNCONSTITUTIONALLY VOID FOR VAGUENESS.
III. WHETHER THE MILITARY JUDGE ERRED WHEN SHE ADMITTED OVER DEFENSE OBJECTION, A PROSECUTION EXHIBIT OFFERED AS SENTENCING AGGRAVATION EVIDENCE THAT ARGUED AIR FORCE CORE VALUES AND ENDORSED “HARSH ADVERSE ACTION” FOR THOSE WHO COMMITTED APPELLANT’S OFFENSES. *70 For the reasons that follow, we hold the evidence was legally sufficient to support Appellant’s convictions. Further, we hold that the challenged instruction was not unconstitutionally vague and that it provided sufficient notice to Appellant that his conduct was subject to criminal sanction in the context of a recruiter’s relationship with applicants. Finally, we conclude that the military judge admitted an impermissible command view on punishment during presenteneing. Consequently, a rehearing on sentence is authorized.
BACKGROUND
Appellant was a thirty-five-year-old staff sergeant assigned to the 331st Recruiting Squadron at Maxwell Air Force Base, Gunter Annex, in Alabama. Appellant completed recruiter training and graduated from “Recruiter Technical School” on June 1, 2000. In response to a number of incidents of sexual harassment by Air Force recruiters, each graduating class of recruiters, including Appellant’s, was briefed about the problem of sexual misconduct and informed of the consequences if they engaged in such misconduct. Each recruiter was additionally given a letter signed by Brigadier General Peter U. Sutton, Commander of the Air Force Recruiting Service, stating that if they failed to treat applicants respectfully and professionally, they “should not be surprised when, once you are caught, harsh adverse action follows.”
After completing processing at Maxwell, Appellant was sent to a recruiting field office in Athens, Georgia.
A. Appellant’s conduct with applicant J.R.B.[1]
J.R.B. first met Appellant at the recruiting office in Athens around September 2000 when she was a seventeen-year-old senior in high school. Appellant initially offered her food and started taking her information. When J.R.B. told Appellant she was an artist, Appellant mentioned that he needed some art for his apartment and stated that he would like to see her artwork. WHiile J.R.B. did not think Appellant expressly stated that he wanted her to come to his apartment, she believed that he implied it. Nothing else unusual happened during this first encounter.
J.R.B. met with Appellant a second time at a recruiting fair outside her school cafeteria. Appellant called out her name and asked that she come to his booth. J.R.B. complied, and the two discussed whether rules in the Air Force were less strict than in the Marines. During the conversation J.R.B. asked whether her eyebrow ring would be permitted in the Air Force. Appellant, referring to the eyebrow ring, commented, “[tjhat’s driving me crazy, that [sic] so sexy.” J.R.B. reported the incident to her French teacher.
At trial, J.R.B. testified that she did not feel intimidated by Appellant, but felt extremely uncomfortable and that after his comments, her “skin was crawling” and she “was all shaky.” Upon defense counsel questioning, J.R.B. also testified that Appellant never asked her out on a date.
B. Appellant’s conduct with applicant P.M.B.[2]
P.M.B. was sixteen years old when she first met Appellant at the recruiting office in October 2000. Appellant commented that *71 she was “pretty” and also that she had “a lot going for [her].” On one occasion when P.M.B. was riding back with Appellant in his car from an Air Force entrance exam, he again commented that she was pretty and placed his hand around her knee area for a couple of seconds. P.M.B. testified that Appellant’s actions could have been done in a conversational way, but that his actions made her feel uncomfortable and intimidated.
C. Appellant’s conduct with applicant A.D.R.[3]
A.D.R. was eighteen years old when she first met Appellant at the recruiting office in July 2000. A.D.R. testified at trial that Appellant was professional initially, but then he started to get uncomfortably personal. Appellant inquired why A.D.R. did not have a boyfriend and why her past relationships with boyfriends had failed. Appellant began looking at his computer, and when A.D.R. asked what he was looking at, Appellant stated it was a picture, but “not the kind you take home to your grandmother.” Appellant repeatedly told A.D.R. that he wanted her to come over to his house at nighttime to take pictures of her, and A.D.R. testified at trial that as she got up to leave, Appellant “lookfed] her up and down.” She also testified that his comments made her “very uncomfortable” and that she never retened to the recruiting office.
DISCUSSION
A. Sufficiency of the evidence
Regarding his conduct with the three applicants mentioned above, the Government charged Appellant with violating paragraphs 1.1.2.2.5. and 1.1.2.2.5.5. of Ah’ Education and Training Command, Instr. 36-2002, Recruiting Procedures for the Air Force (Apr. 18, 2000) [hereinafter AETCI 36-2002].[4] Appellant renews his argument before this Court that the evidence was not legally sufficient to support his conviction.
In determining whether the evidence is legally sufficient, we “‘view[] the evidence in the light most favorable to the prosecution’ ” and decide whether “ ‘any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.’ ” United States v. Brown, 55 M.J. 375, 385 (C.A.A.F.2001) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The assessment of the legal sufficiency of the evidence is limited to the evidence presented at trial. United States v. Dykes, 38 M.J. 270, 272 (C.M.A.1993).
The elements of an Article 92, UCMJ, violation for failure to obey a lawful general order or regulation are: (a) a certain lawful general order or regulation was in effect; (b) the accused had a duty to obey that order or *72 regulation; and (e) the accused violated or failed to obey the order or regulation.
There is no question that AETCI 36-2002 was in effect at the time of Appellant’s offenses. The instruction became effective April 18, 2000, over two months prior to his interactions with the applicants involved in this case. Moreover, there is no issue concerning Appellant’s duty to obey the instruction. AETCI 36-2002 is the primary instruction used by the Air Force Recruiting Service in providing guidance to recruiters and listing recruitment procedure. It informs all recruiters in the field of their duties, and outlines prohibited conduct with prospective applicants. AETCI 36-2002 expressly states that “[f]ailure to observe the prohibitions and mandatory provisions ... may result in punishment under Article 92, or other articles, of the [UCMJ].”
The element in question is whether the evidence proved beyond a reasonable doubt that Appellant failed to obey AETCI 36-2002.
1. Conduct with J.R.B.
Regarding his conduct with J.R.B., Appellant was found guilty of violating AETCI 36-2002, paragraph 1.1.2.2.5.5. This provision proscribes “[e]ngaging in any verbal or physical conduct of a sexual nature that creates an intimidating, hostile, or offensive environment.” Appellant argues that because he never expressly invited J.R.B. over to his apartment, he cannot be guilty of engaging in verbal conduct of a sexual nature that creates an offensive environment. We disagree. Comments need not be expressly or explicitly sexual to be of a sexual nature. Sexual innuendo, or a recruiter’s implied invitation to an applicant that latently suggests sexual activity, may be sexual in nature. Moreover, reasonable triers of fact could have found that Appellant’s sexually laden comments to J.R.B. that her eyebrow ring was “driving [him] crazy,” and that it was “so sexy,” were expressly sexual and contributed to the creation of the offensive environment.
2. Conduct with P.M.B.
Regarding Appellant’s interaction with P.M.B., he was charged with violating paragraph 1.1.2.2.5. of AETCI 36-2002. That paragraph states that “[r]ecruiting personnel will maintain high standards of conduct and be totally professional in their dealings with applicants.” The instruction incorporates an unexhausted list of prohibited behavior, including making or accepting sexual advances from applicants, attempting to date applicants, using threats, promises, or pressure to gain sexual favors, or engaging in verbal conduct of a sexual nature that creates an intimidating, hostile, or offensive environment.
In this case, a reasonable member could have found that Appellant engaged in conduct of a sexual nature with a sixteen-year-old that was in the position of needing to ride alone with Appellant in his car. Reasonable triers of fact could have concluded that by placing his hand on P.M.B.’s knee shortly after commenting on her appearance, Appellant engaged in conduct of a sexual nature and created an intimidating or offensive environment.
3. Conduct with A.D.R.
With respect to A.D.R., Appellant was charged with violating paragraph 1.1.2.2.5.5. of AETCI 36-2002. Under the circumstances of this case, a rational trier of fact could determine that Appellant created an offensive environment by implying that he was looking at inappropriate images while he was conversing with A.D.R. Based on AD.R.’s testimony, the members could also have reasonably concluded that Appellant’s invitation to A.D.R. to come to his home alone at night to “take pictures” was anything but a request for an innocent rendezvous, especially in the context of how A.D.R. stated Appellant looked at her.
4. Conclusion
Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Appellant violated AETCI 36-2002 with respect to *73 J.R.B., P.M.B., and A.D.R. by engaging in verbal conduct of a sexual nature that created an intimidating, hostile, or offensive environment. See Brown, 55 M.J. at 385.
Appellant was in a position where prospective applicants had a right to expect that they would be treated with dignity and respect. AETCI 36-2002 requires as much. Applicants expect a recruiter to evaluate them for their skills, potential, and ability to contribute to the Air Force, and not for then-sexual appeal.
B. Constitutionality of the instruction
We now turn to Appellant’s constitutional challenge to the instruction. Appellant argues that subjecting him to criminal sanction for violating AETCI 36-2002 infringes upon his due process rights because the instruction was vague, and he lacked fair notice that sexually offensive conduct could be subject to criminal sanction. In addition, he argues that a reasonable person could not conclude that his particular statements were unacceptable and could subject him to criminal sanction.
To withstand a challenge on vagueness grounds, a regulation must provide sufficient notice so that a servicemember can reasonably understand that his conduct is proscribed. United States v. Moore, 58 M.J. 466, 469 (C.A.A.F.2003). See also United States v. Vaughan, 58 M.J. 29, 31 (C.A.A.F.2003) (holding due process requires fair notice that an act is forbidden and subject to criminal sanction). This Court recognizes that possible sources of “fair notice” include: federal law, state law, military ease law, military custom and usage, and military regulations. Id. at 31. Training, pamphlets, and other materials may also serve as sources of notice because they may give context to regulations and explain the differences between permissible and impermissible behavior. See Brown, 55 M.J. at 384.
1. Notice of criminal sanction
As a threshold matter we note that the instruction as well as the recruiter school placed Appellant on notice that his conduct was subject to criminal sanction. Appellant completed a recruiter training course in which he was instructed on proper comportment with applicants and informed of rules prohibiting sexual misconduct. The Staff Judge Advocate (SJA), Major Robert Mitchell, testified at trial that he interacted with recruiters from July 1998 through July 2000 as they came through “Recruiter Technical School” training, and that he warned applicants, including Appellant’s June 2000 class, about the consequences of engaging in misconduct.[5] Major Mitchell discussed several high profile sexual misconduct cases with recruiters in training to “let them see if they decide not to obey ... what’s going to happen.” Upon graduation from training, every recruiter in the Air Force Recruiting Service was given a folder with a letter signed by Brigadier General Peter U. Sutton, Commander of the Air Force Recruiting Service, stating that such misconduct “will not be tolerated.”[6] Major Mitchell testified that the issue was so important that “almost every *74 Commander gave it to them a second time when they got to their units.” Moreover, the instruction itself is a source of notice. The instruction expressly states that failure to observe its prohibitions may result in punishment under Article 92, UCMJ, and that compliance is mandatory.
2. Was the regulation vague as applied in context?
Appellant primarily argues that even if he were on notice as to the general criminal prohibition regarding sexual contact with applicants, the instructions were too vague to provide him with fair notice as to what specific types of conduct would be prohibited. He contends that the vagueness of AETCI 36-2002 is apparent when compared with other sexual harassment directives in the armed forces that provide specific examples of prohibited conduct. For example, Appellant posits Dep’t of the Navy, Sec’y of the Navy Instr. 5300.26C, Policy on Sexual Harassment (Oct. 17, 1977) [hereinafter SECNAVINST 5300.26C], discussed in United States v. Jones, No. NMCM 200000845, 2003 CCA LEXIS 4, at *8-*16, 2003 WL 131691, at *3-*7 (N.M.Ct.CrimApp. Jan. 16, 2003) (unpublished), as a proper model of clarity. Unlike AETCI 36-2002, SECNA-VINST 5300.26C provides a detailed summary of the criteria for sexual harassment. It discusses “the range of workplace behaviors that may constitute sexual harassment” and “utilizes a ‘traffic light illustration ... in which behaviors are divided up into three zones, corresponding to a traffic light.’ ” Jones, 2003 CCA LEXIS 4, at *15, 2003 WL 131691, at *6 (citing SECNAVINST 5300.26C, enc. (2), para. 4). Behavior falling in the “yellow zone,” which may or may not constitute sexual harassment, includes violating personal space, whistling, questions about personal life, lewd and suggestive comments, repeated requests for dates, and sexually suggestive touching or gesturing. Jones, 2003 CCA LEXIS 4, at *15-*16, 2003 WL 131691, at *6.
In another context it may be prudent to have specific prohibitions illustrated with examples in order to identify criminal conduct; however, the question here is whether the regulation is constitutionally vague as applied to a recruiter’s conduct with applicants. In the context of recruiting, an instruction as detailed as SECNAVINST 5300.26C is not required. AETCI 36-2002 is clear that sexual conduct by recruiters with applicants is prohibited, and recruiters must be “totally professional in their relationships with applicants.” AETCI 36-2002, 1.1.2.2.5. It was not necessary for the Air Force recruiting instruction to identify every possible nook and cranny in the line of conduct, for the line is straight and narrow.
Moreover, this introductory paragraph of the regulation incorporates the subordinate paragraphs that follow. The subordinate paragraphs provide a range of illustrative, but not exhaustive conduct that would violate the regulation. For example, recruiters are prohibited from “attempting to date any applicant” or “making sexual advances towards applicants.” Id. at 1.1.2.2.5.3; 1.1.2.2.5.2. With such notice, a reasonable servicemem-ber need not have pondered whether placing his hand on an applicant’s knee while riding alone with her in a car, inviting an applicant to his apartment at night to take pictures, or telling an applicant that her appearance was “driving [him] crazy” and was “so sexy,” were prohibited.
Given the evolving and innumerable ways in which sexually offensive conduct may occur in the recruiting context, the Air Force was not required, as a matter of law, to expressly set forth all conceivable instances of impermissible conduct. In our view, the language of AETCI 36-2002 provided ample discussion of the types of behavior prohibited by the regulation and a reasonable person would have been on notice that misconduct of the sort engaged in by Appellant was subject to criminal sanction.
3. First Amendment Challenge
Finally, Appellant argues that AET-CI 36-2002 impermissibly curtails a recruiter’s First Amendment rights to expression. While intimidating, hostile or offensive speech may be tolerated in civilian society, in the armed forces, other considerations also *75 come to bear. Restrictions on speech may exist that have no counterpart in civilian society. Parker v. Levy, 417 U.S. 733, 759, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). “ ‘[T]he right of free speech in the armed services is not unlimited and must be brought into balance with the paramount consideration of providing an effective fighting force for the defense of our Country.’ ” United States v. Brown, 45 M.J. 389, 396 (C.A.A.F.1996) (quoting United States v. Priest, 21 C.M.A. 564, 570, 45 C.M.R. 338, 344 (1972)). Proper relations between recruiters and applicants in the armed forces are indispensable in attracting young people to serve their country and in maintaining military discipline. Intimidating, hostile, or offensive conduct of a sexual nature by recruiters drives potential applicants away from military service and undermines the effectiveness of the armed forces.[7]
C. Admission of the commander’s letter
During the sentencing phase of Appellant’s trial, the Government moved to admit in aggravation the letter from Appellant’s commander, Brigadier General Peter U. Sutton, Commander of the Air Force Recruiting Service.[8] According to the trial counsel, this exhibit was in support of the anticipated testimony of the SJA of the Recruiting Service, Major Mitchell. The theme of the letter as it related to Appellant’s charged misconduct was that “unprofessional relationships with applicants ... will not be tolerated.” After explaining how such misconduct, specifically sexual misconduct, erodes the integrity and effectiveness of the recruiting effort, the letter concluded with the following: “If you choose to ignore these important rales for the sake of your own pleasure or esteem, you should not be surprised when, once you are caught, harsh adverse action follows.”
Trial counsel’s position was that Major Mitchell would testify that this letter was provided to every recruiter coming through “Recruiting Technical School,” including Appellant. The Government’s argument was that the letter demonstrated the aggravating nature of Appellant’s conduct because he had knowledge of what standard of conduct was expected of recruiters, and notwithstanding, chose to conduct himself otherwise.
Defense counsel objected on the basis of Rule for Courts-Martial (R.C.M.) 403 and argued, among other things, that the letter impermissibly introduced command policy into the sentencing process. Defense counsel’s specific concern was the statement seemingly endorsed “harsh adverse action.” The military judge disagreed and admitted the letter, concluding that she discerned “[no] type of policy argument, or policy statement in the letter like in drug offenses where a Commander might say “You will not remain in the Air Force’____ I don’t see any ... policy ... statement that says Tou’re going to be kicked out of the Air Force.’ ”
We review a military judge’s decision to admit evidence on sentencing for a clear abuse of discretion. United States v. Manns, 54 M.J. 164, 166 (C.A.A.F.2004). We have long recognized “the need in the service for a broad regulatory authority for the maintenance of discipline.” United States v. Fowle, 7 C.M.A. 349, 351, 22 C.M.R. 139, 141 (1956); United States v. Hawthorne, 7 C.M.A. 293, 299, 22 C.M.R. 83, 89 (1956). “A policy directive may be promulgated to improve discipline; however, it must not be used as leverage to compel a certain result in the trial itself.” Fowle, 7 C.M.A. at 351, 22 C.M.R. at 141. Thus, we have condemned references to command policies or views “which in effect bring[ ] the commander into the deliberation room.” United States v. Grady, 15 M.J. 275, 276 (C.M.A.1983). Such *76 a practice invades the province of the sentencing authority by raising the spectre of command influence. Id.
In this case, the military judge’s rationale for concluding that no impermissible command policy was being introduced, while partially accurate, did not reach far enough. While the letter does not suggest that one convicted of this type of misconduct should be punitively separated, “ ‘the appearance of improperly influencing the court-martial proceedings’” is troubling because it conveys the command’s view that harsh action should be taken against an accused. Id. (quoting Hawthorne, 7 C.M.A. at 297, 22 C.M.R. at 87). It is just such an appearance that we have cautioned against in the past. Id. “A trial must be kept free from substantial doubt with respect to fairness and impartiality.” Id. at 276; Fowle, 7 C.M.A. at 352, 22 C.M.R. at 142. Moreover, the letter was admitted without the benefit of an instruction to the members as to how such a view should be considered. Consequently, consistent with this Court’s practice, we are not convinced beyond a reasonable doubt that these members were not influenced by the letter. United States v. Thomas, 22 M.J. 388, 394 (C.M.A.1986).
DECISION
The decision of the United States Air Force Court of Criminal Appeals is affirmed with respect to the findings but reversed as to the sentence. The sentence is set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing on the sentence is authorized.

. The specification on the charge sheet related to J.R.B. was drafted as follows:
Specification 2: [D]id, at or near Farmington, Georgia, from on or about 1 September 2000 to on or about 31 October 2000, violate a lawful general regulation, to wit: paragraph 1.1.2.2.5.5, Air Education and Training Command Instruction 36-2002, dated 18 April 2000, by engaging in verbal conduct of a sexual nature with J.R.B. that created an intimidating, hostile or offensive environment.

. This specification was drafted on the charge sheet as follows:
Specification 3: [D]id, at or near Athens, Georgia, on divers occasions from on or about 1 October 2000 to on or about 27 December 2000, violate a lawful general regulation, to wit: paragraph 1.1.2.2.5, Air Education and Training Command Instruction 36-2002, dated 18 April 2000, by engaging in verbal and physical conduct of a sexual nature with P.M.B. that created an intimidating, hostile or offensive environment.

. This specification was drafted as follows:
Specification 4: [D]id, at or near Athens, Georgia, from on or about 18 April 2000 to on or about 1 November 2000, violate a lawful general regulation, to wit: paragraph 1.1.2.2.5.5., Air Education and Training Command Instruction 36-2002, dated 18 April 2000, by engaging in verbal conduct of a sexual nature with A.R. that created an intimidating, hostile, or offensive environment.

. The portions of AETCI 36-2002 that are at issue in this case state the following:
1.1.2.2.5. Recruiting personnel will maintain high standards of conduct and be totally professional in their relationships with applicants. Inappropriate conduct and unprofessional relationships include, but are not limited to, the following:
I.I.2.2.5.I. Developing or attempting to develop or maintain an intimate personal relationship with an applicant.
1.1.2.2.5.2. Making sexual advances towards applicants or seeking or accepting sexual advances from applicants.
1.1.2.2.5.3. Dating or attempting to date any applicant whose processing has begun and has not been terminated due to the applicant’s own withdrawal or one of the grounds of unacceptability outlined elsewhere in this instruction____
1.1.2.2.5.4. Using grade or position, threats, pressure, or promise of return of favors or favorable treatment in an attempt to gain sexual favors from applicants.
Ll.2.2.5.5. Engaging in any verbal or physical conduct of a sexual nature that creates an intimidating, hostile, or offensive environment.
1.1.2.2.5.6. Using personal resources to provide applicants with lodging or transportation.
1.1.2.2.5.7. Accepting an applicant’s personal belongings or household goods for storage or any other reason.

. Although Major Mitchell testified on sentencing, his testimony is nonetheless relevant to our analysis and resolution of the constitutional issue.

. Paragraph two of the letter states:
There is an important reason that AFI [Air Force Instruction] 36-2002 forbids recruiters from engaging in unprofessional relationships with applicants. Whether you feel powerful or not, each recruiter is in what is viewed as an influential position. The bulk of our applicants are vulnerable young people, often teenagers. You hold substantial power in their lives ... at least in their minds, as well as in the eyes of their parents. Even in cases where the facts indicate consensual sexual activity, the victims often feel like an agent of the Air Force took advantage of them. You must keep your relationships with applicants professional—period!
Paragraph four of the letter states:
Remember, “integrity first” and "service before self” are two of our core values. These two types of misconduct violate those principles. The citizens of this country demand that we treat our applicants respectfully, equitably, and ethically. This command and the U.S. Air Force will accept no less. If you choose to ignore these important rules for the sake of your own pleasure or esteem, you should not be surprised when, once you are caught, harsh adverse action follows.

. The record reflects that all three of the applicants involved in this case dropped out of the recruitment process following their interactions with Appellant.

. This letter was also discussed above in Part B, and was introduced during the sentencing phase as a source of notice that Appellant’s conduct was subject to criminal sanction. However, a different question presented here is whether the letter should have been admitted on sentencing, in light of its apparent reference to a command policy, without providing the members with an instruction as to how the command view should be considered.