# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 38979**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Christopher J. HILL**
Captain (O-3), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 12 July 2017

———————————

*Military Judge:* Shelly W. Schools.

*Approved sentence:* Dismissal, confinement for 45 days, and forfeiture of all pay and allowances. Sentence adjudged 16 November 2015 by GCM convened at Laughlin Air Force Base, Texas.

*For Appellant:* Major Johnathan D. Legg, USAF.

*For Appellee:* Major J. Ronald Steelman III, USAF; Gerald R. Bruce, Esquire.

Before MAYBERRY, HARDING, and C. BROWN, *Appellate Military Judges.*

Judge HARDING delivered the opinion of the court, in which Senior Judge MAYBERRY and Judge C. BROWN joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

HARDING, Judge:

In accordance with his pleas, a general court-martial consisting of a military judge sitting alone found Appellant guilty of one specification of failure to obey a lawful no-contact order, one specification of making a false official

statement, two specifications of conduct unbecoming an officer and gentleman, one specification of adultery, three specifications of fraternization, and one specification of obstruction of justice, in violation of Articles 92, 107, 133, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 907, 933, 934. The military judge sentenced Appellant to a dismissal, confinement for three months, and forfeiture of all pay and allowances. Pursuant to a pretrial agreement (PTA), the convening authority approved only so much of the sentence as provided for a dismissal, 45 days of confinement, and forfeiture of all pay and allowances.

Appellant raises three assignments of error: (1) unlawful command influence affected Appellant's sentencing hearing;[1] (2) admission of squadron commander's opinion on Appellant's rehabilitative potential was plain error; and (3) trial counsel's reference to Air Force Core Values in his sentencing argument was plain error. We find no prejudicial error and affirm.

## I. BACKGROUND

In October of 2013, Appellant met Second Lieutenant (2d Lt) RS at a party hosted by student-pilots at Laughlin Air Force Base, Texas. At the time, Appellant was assigned as an instructor pilot and had also been appointed a flight commander. Appellant was married to AH. 2d Lt RS was assigned as a student pilot and was also married. After mutual flirtation between the two at the party, 2d Lt RS invited Appellant to her home where they engaged in sexual intercourse. While not in effect when Appellant and 2d Lt RS first met and had sex, Air Education and Training Command Instruction (AETCI) 36-2909, *Recruiting, Education and Training Standards of Conduct*, became effective on 2 December 2013. The newly-published instruction contained a provision that expressly prohibited personal relationships between instructors and students. Notwithstanding the prohibition in the AETCI, Appellant and 2d Lt RS continued to spend time together throughout the fall, winter, and following spring to include a sexual liaison in the squadron flight commander's office. Appellant's relationship with 2d Lt RS did not go unnoticed and eventually came to the attention of his leadership.

A commander-directed investigation commenced in May 2014 to determine whether Appellant and 2d Lt RS had engaged in misconduct, to include an unprofessional relationship, adultery, and conduct unbecoming an officer and gentleman. On 22 May 2014, the investigating officer interviewed Appellant about his relationship with 2d Lt RS. Appellant lied and maintained that

---

[1] Raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

his relationship with 2d Lt RS was strictly professional. Immediately following the interview, Appellant was ordered by his squadron commander, Lieutenant Colonel (Lt Col) ML, both orally and in writing, to have no contact with 2d Lt RS. Appellant, however, continued to communicate with 2d Lt RS and spend time with her. Among other clandestine methods, Appellant directly communicated with 2d Lt RS through the use of "burner" phones and he met her at various remote locations in and around Laughlin Air Force Base to avoid detection. Additionally, Appellant and 2d Lt RS took numerous trips together outside of Del Rio, Texas. As the investigation continued, Air Force Office of Special Investigations (AFOSI) became involved. AFOSI recovered Appellant's burner phone and retrieved 61 messages from Appellant to 2d Lt RS.

AFOSI also executed a search of an airplane hangar at the Del Rio International Airport where Appellant had stored his homebuilt personal kitplane. AFOSI discovered various media storage devices belonging to Appellant wrapped in plastic bags and buried under a patch of disturbed dirt. Appellant had convinced 2d Lt RS to permit him to photograph and video-record her in various sexual poses, as well as their sexual activity, on the condition that no one other than Appellant would ever view the explicit digital material. Appellant buried devices containing recorded material in order to impede the ongoing investigation into his relationship with 2d Lt RS, to prevent others from ever seeing the explicit images of her, and to ensure that the files stored on the devices were not damaged. Upon examination of these devices, AFOSI identified several sexually explicit photographs and videos of Appellant and 2d Lt RS, as well as stored digital photographs of several other women. Three of the women were later identified as enlisted Airmen that Appellant had deployed with to Guam or been assigned with at Minot Air Force Base, North Dakota. Further investigation established that Appellant had engaged in flirtatious communications with all three women through social media, and he had engaged in sexual intercourse with one of them while deployed to Guam.

As described above, Appellant was charged with nine specifications and entered into a PTA whereby he agreed to, among other terms, plead guilty as charged and waive "all motions which may be waived under the Rules for Courts-Martial." In return, the convening authority agreed to approve no more than 45 days of confinement.

Upon inquiry by the military judge regarding the scope of the "waive all waivable motions" term of the PTA, Appellant's civilian trial defense counsel stated that one motion considered by the Defense but "given up [was] with respect to unlawful command influence." Counsel further told the military judge "we have some information we'll provide you as part of an unsworn statement about an aura of intimidation at Laughlin Air Force Base with respect to members stepping forward and providing presentencing materials for

an individual going through a court-martial and how that might negatively impact their career." The military judge then continued and completed the PTA inquiry, accepted Appellant's guilty plea, entered findings of guilty to all charges and specifications, and then recessed the court.

Once the court was called back to order, the military judge revisited the waiver of motions provision in the PTA and stated on the record "that certain types of unlawful command influence cannot be waived particularly UCI related to the adjudicative process which includes access to witnesses and that sort of seemed to be the thing Mr. [D] was alluding to when he was talking about this motion." The military judge further told the parties, "I want to make it clear on the record the defense is going to be allowed to present that evidence [of unlawful command influence] in whatever form they deem appropriate. I know you have already planned to put that evidence before the court. I just want to make it clear that the court is not putting any limitations and the government is not putting any limitations on the defense to put that information before the court." Notwithstanding the military judge's clarifying interpretation of the scope of the "waive all waivable motions" term, Appellant did not make a motion for relief at trial or otherwise seek a remedy from the military judge due to the alleged "aura of intimidation." Instead, as counsel had previously indicated, information was provided as part of Appellant's unsworn statement[2] and argued by his counsel in sentencing.

## II. DISCUSSION

### A. Unlawful Command Influence

Relying solely upon his unsworn statement made at trial, Appellant now avers on appeal that unlawful command influence prejudiced his ability to receive a fair sentencing hearing and that his sentence to a dismissal should be set aside. We disagree.

#### 1. Waiver and Unlawful Command Influence

The Government asserts that Appellant waived the issue of unlawful command influence at trial and "therefore extinguished this court's ability to consider the issue and grant relief." As the Government correctly points out in their brief, "Appellant had the opportunity to raise this issue in a proper motion; however, he made the strategic decision to forego the motion and

---

[2] The matters attached to the unsworn statement that Appellant relies upon for his claim of unlawful command influence were provided to the Government and military judge for the first time during the presentencing session.

plead guilty, while opting to present information in an unsworn statement." To be sure, we certainly express a preference that all allegations of unlawful command influence be addressed at the earliest opportunity and litigated at the trial stage to not only build an adequate record for appellate review, but more importantly, to permit the Government to proactively counteract and the military judge to appropriately tailor remedies to any prejudicial impact of unlawful command influence. Even so, we are mindful that claims of unlawful command influence that interfere with the adjudicative process may not be waived.

When describing "situations in which superiors have unlawfully controlled the actions of subordinates in the exercise of their duties," the United States Court of Appeals for the Armed Forces (CAAF) "has sought to draw a distinction between the accusatorial process and the adjudicative stage, that is, the difference between preferral, forwarding, referral, and the adjudicative process, including interference with witnesses, judges, members, and counsel." *United States v. Weasler,* 43 M.J. 15, 17–18 (C.A.A.F. 1995). In *Weasler*, the court distinguished its prior precedent where it "never allowed doctrines of waiver to prevent consideration of claims of improper command control"[3] and found that an accused "should be permitted to initiate an affirmative and knowing waiver of an allegation of unlawful command influence in the preferral of charges in order to secure the benefits of a favorable pretrial agreement." *Id*. at 19. *Weasler* provides one example where unlawful command influence in the accusatorial process could be waived. The CAAF has not, however, applied waiver to allegations of unlawful command influence in the adjudicative process whether affirmatively initiated by an accused to secure the benefits of a favorable PTA or not. Appellant's counsel described the unlawful command influence claim as an "aura of intimidation" that effectively chilled prospective witnesses from providing character letters or testifying on Appellant's behalf during sentencing. As the military judge noted at trial, when reviewing the PTA, "certain types of unlawful command influence cannot be waived particularly UCI related to the adjudicative process which includes access to witnesses." As that is what is described here, we decline to find and apply waiver to Appellant's claim.

---

[3] *See United States v. Blaylock*, 15 M.J. 190 (C.M.A. 1983) (citing *United States v. Hawthorne*, 22 C.M.R. 83, 89 (C.M.A. 1956)); *United States v. Ferguson*, 17 C.M.R. 68 (C.M.A. 1954).

### 2. Appellant's Burden to Produce Some Evidence

Although Appellant is not prevented by waiver from raising his claim of unlawful command influence for the first time on appeal, he must present "something more than an appearance of evil to justify action by an appellate court in a particular case. Proof of command influence in the air, so to speak, will not do." *United States v. Allen*, 33 M.J. 209, 212 (C.M.A. 1991). Appellant has the initial burden of producing sufficient evidence to raise unlawful command influence. *United States v. Ayala*, 43 M.J. 296, 299 (C.A.A.F. 1995); *see Green v. Widdecke*, 42 C.M.R. 178, 181 (C.M.A. 1970) ("Generalized, unsupported claims of 'command control' will not suffice to create a justiciable issue."). "The threshold triggering further inquiry should be low, but it must be more than a bare allegation or mere speculation." *Ayala*, 43 M.J. at 299. "The quantum of evidence necessary to raise unlawful command influence is the same as that required to submit a factual issue to the trier of fact." *Id.* at 300.

As noted above, Appellant relies solely upon the matters attached to his unsworn statement at trial. Specifically, he included printed copies of email correspondence with ostensibly two fellow pilots whom he solicited to write character statements for him. The names of the solicited persons are redacted. Both declined to provide a character reference for Appellant but did provide their reasons as follows:

> Email 1
>
> I thought about this for a really long time and as much as I don't want you to be completely rocked over this, I feel that for my family's sake it's more risk than I'm willing to take. By that, I mean that being a fellow BUFF driver means that we're going to have similar circles and acquaintances that wouldn't exist if I was a different MWS.[4] It wouldn't matter if these memos didn't become public record but any leadership I come in contact with will have access to it. I really hope you're able to get out, move on and follow your aviation dreams.
>
> Email 2

---

[4] "BUFF" is a nickname for the B-52 Stratofortress, a long-range, heavy bomber. "BUFF driver" likely referred to a B-52 pilot. "MWS" likely referred to either major or military weapons system.

> Hey Jockey, I got your voicemail this morning. I've been out of town a lot for work and I haven't been keeping up with my emails. I really, really hate it but the way the Air Force is nowadays I don't think I should write a letter. The last thing I want is for someone to come after me, which they very well could do. If this were in a vacuum, I absolutely would do it and I really want to help, but it doesn't work that way. I really wish you the best of luck and I hope it works out for you. Once all of this done and past you, let me know and maybe we can get together.

> It has nothing to do with you, and everything to do with the memo the CSAF sent out. It basically says that we are accountable for any written communication in any context. What I don't want is for the JAG to get a letter from me, then start calling me and my leadership and highlighting me. I don't have anything to hide, but in today's Air Force I have to be careful. It's nothing personal and I hope this explains things more.

Considered at face value[5], the emails do not identify any action taken or statement made by a member of Appellant's chain of command who had any nexus to Appellant's case or impact on the potential character witnesses. Even more generally, the emails do not support finding a climate at Laughlin Air Force Base or in the Air Force wherein leaders would admonish or censure military members who provided character references for those facing disciplinary actions. While the emails do demonstrate a general reluctance to provide statements, evidence of unlawful command influence is lacking.

---

[5] The Government also argues that as the email correspondence was offered and accepted as part of Appellant's unsworn statement during sentencing, it is not evidence. Unsworn statements are an authorized means to place information before a sentencing authority for consideration on sentence, they are not evidence. *United States v. Provost*, 32 M.J. 98, 99 (C.M.A. 1991); *United States v. Satterley*, 52 M.J. 782, 785 (A.F. Ct. Crim. App. 1999); *United States v. Britt*, 44 M.J. 731, 733 (A.F. Ct. Crim. App. 1996). The Government thus urges this court to conclude that an unsworn statement is not a sufficient means to meet Appellant's burden of production of some "evidence" to raise an issue of unlawful command influence on appeal. As we have found the quantum presented in the unsworn statement lacking, we not decide this issue.

**B. Rehabilitative Potential Testimony**

Lt Col ML, Appellant's squadron commander when the unprofessional relationship investigation began, testified for the Government about the adverse mission impact resulting from Appellant's misconduct. He also offered his opinion that Appellant's rehabilitative potential was "poor to fair." Although not objected to at trial, Appellant avers on appeal that admission of the opinion on rehabilitative potential was prejudicial error as the witness testified that his opinion was principally based on the severity of the offenses.

A military judge's decision to admit or exclude evidence is reviewed for an abuse of discretion. *United States v. Eslinger*, 70 M.J. 193, 197 (C.A.A.F. 2011). As there was no objection at trial, the admission of the testimony is reviewed for plain error. *Id*. at 197–98. Under a plain error analysis, Appellant must persuade this court that: (1) there is an error; (2) that the error is clear or obvious; and (3) that the error materially affected substantial rights. *United States v. Powell*, 49 M.J. 460, 463 (C.A.A.F. 1998).

Evidence in the form of opinion testimony of an accused's rehabilitative potential, or lack thereof, is permissible in sentencing. Rule for Courts-Martial (R.C.M.) 1001(b)(5)(A). The witness offering the opinion "must possess sufficient information and knowledge about the accused to offer a rationally-based opinion that is helpful to the sentencing authority." While knowledge of the nature and severity of the offense or offenses are properly a part of the foundation for an opinion as to rehabilitation potential, the witness's opinion "regarding the severity or nature of the offense or offenses may not serve as the principal basis for an opinion of the accused's rehabilitative potential." R.C.M. 1001(b)(5)(B–C). Further, once a sufficient foundation is laid, an opinion "is limited to whether the accused has rehabilitative potential and to the magnitude and quality of any such potential." R.C.M. 1001(b)(5)(D). The witness generally may not further elaborate or describe the particular reasons for the opinion. However, depending on the nature and scope of cross-examination, the witness may be permitted to testify regarding specific instances of conduct. R.C.M. 1001(b)(5)(E–F).

After establishing that he had been Appellant's commander, knew Appellant for about a year, and professionally interacted with him on a recurring basis, Lt Col ML testified that Appellant's rehabilitative potential was "poor to fair." Following cross-examination, including that Lt Col ML understood that the term "rehabilitation" referred to in society as a whole and was not limited to the Air Force, the following colloquy occurred during redirect:

> Q. Colonel [L] can you tell the court a little bit about the basis for your opinion as to why your opinion was "poor to fair?"

8

A. Yes sir. My time knowing [Appellant] there are two things that he vowed for lack of better words or vowed that he would support was my assumption via the law was his marriage to his wife and the other was to support and defend the Constitution and the trust we have. My experience with [Appellant] is he violated both of those which is why I am saying "poor to fair" and then even when he was – it was brought to my attention and guidance was given to him for example, a no contact order, he still did it and not only did he do it, but he did it in a manner that was deceitful to not only his spouse but to the organization, the 434th and the Team XL, the 47th Flying Training Wing. So that's why I got my reservations.

Q. Sir, [is] there anything about coming in before this misconduct came to light and what you noticed about him?

A. Like I said I did see some potential in [Appellant] or I wouldn't have put him in the position he was but some potential – some decisions commanders make aren't perfect and this was one of them and so I erred a little bit but what I saw was somebody who was nervous, unsure of himself and was struggling to find – he wasn't comfortable in his own skin to use some slang terms that's in society today. I think that's the basis from what I saw of him and I think it was compounded based on the accusations that were put in front of him.

Based on this testimony, Lt Col ML's opinion regarding the severity or nature of Appellant's offenses plainly served as the principal basis for his opinion of Appellant's rehabilitative potential. Yet even assuming plain or obvious error, Appellant has failed to demonstrate prejudice. This testimony was but a small piece of the whole sentencing case and "[a]s the case was tried by military judge alone and the basis of the commander's opinion was well set forth, we are confident that the judge placed the testimony in proper perspective." *United States v. Horner*, 22 M.J. 294, 296 (C.M.A. 1986).

## C. Improper Sentencing Argument

Finally, Appellant asserts that trial counsel impermissibly injected command policy by referencing Air Force Core Values in his sentencing argument. The legal test for improper argument is whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused. "Where improper argument occurs during the sentencing portion of the trial, we determine whether or not we can be confident that the appellant was sentenced on the basis of the evidence alone." *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014) (citing *United States v. Halpin*, 71 M.J. 477,

480 (C.A.A.F. 2013)); *see United States v. Marsh*, 70 M.J. 101, 106 (C.A.A.F. 2011); *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000); *see also United States v. Hornback*, 73 M.J. 155 (C.A.A.F. 2014). Because trial defense counsel did not object to any of the statements, we review under a plain error standard. To find plain error we must find that: (1) there is an error; (2) that the error is clear or obvious; and (3) that the error materially affected substantial rights. *Powell,* 49 M.J. at 463. We have examined the references made to Air Force Core Values by trial counsel in the sentencing argument and find no error, plain or otherwise.

In pertinent part, trial counsel made the following sentencing argument to the military judge:

> Captain Hill intentionally defied the rules, the regulations and the laws of the United States Military. He's an officer; he chose to become an officer. Captain Hill chose to raise his hand and show up to the United States Air Force. When he did that *there's an expectation that he follow those core values and I think of it as this box of core values; the integrity, service and the excellence. He stepped into that box and he cannot step outside of that box without punishment.*

To support his claim that the reference to Air Force Core Values was error, Appellant primarily relies on the holding in *United States v. Pope*, 63 M.J. 68 (C.A.A.F. 2006). *Pope* is easily distinguished from the facts of Appellant's case. In *Pope*, a recruiter was convicted by members of a variety of offenses relating to unprofessional conduct with prospective applicants. During the sentencing phase, the military judge admitted over defense objection a letter from the commanding general of the Air Force Recruiting Service that stated in no uncertain terms that "unprofessional relationships with applicants . . . will not be tolerated." *Id.* at 75. The letter concluded with the following warning: "If you choose to ignore these important rules for the sake of your own pleasure or esteem, you should not be surprised when, once you are caught, *harsh action follows.*" *Id.* (Emphasis added.)

The court in *Pope* found the letter "troubling because it convey[ed] the command's view that harsh action should be taken against an accused" who committed the types of offenses that appellant was convicted of and thereby created an appearance of improper command influence. *Id.* at 76. The court further noted that the letter was admitted without an instruction to the members as to how the evidence should be considered. On the facts of that case, the court concluded that they were not convinced beyond a reasonable doubt that the members were not influenced by the letter.

Where the issue in *Pope* addressed the influence of a prosecution exhibit admitted in a members case without limiting instruction wherein the accused's commander indicated harsh action should be meted out for recruiter misconduct in a recruiter misconduct case, here the trial counsel made a few passing references to Air Force Core Values. As this court has previously made clear, we "believe that the Air Force Core Values are meant to be inspirational and aspirational, but are not interjected inappropriately as 'command policy' when referenced during the sentencing phase of a court-martial." *United States v. Gatewood,* 65 M.J. 724, 726 (A.F. Ct. Crim. App. 2007).

Even if trial counsel's references to Air Force Core Values was plainly erroneous, such references did not materially prejudice a substantial right of Appellant. Appellant has presented no evidence that the sentencing authority was impermissibly swayed by trial counsel's argument, and we find none. As part of the presumption that military judges know and follow the law absent clear evidence to the contrary, we "presume that the military judge is able to distinguish between proper and improper sentencing arguments." *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007). This is true regardless of whether the military judge states on the record what portion of the argument is improper and will not be considered. *Id.* We are confident that Appellant was sentenced by the military judge based on the evidence alone. As such, he has not suffered material prejudice to a substantial right.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court