Judge BAKER delivered the opinion of the Court.
A general court-martial composed of officer and enlisted members convicted Appel-lanVCross-Appellee (Appellant), contrary to his pleas, of three specifications of possession of child pornography, in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2006). The adjudged and approved sentence included confinement for three years, reduction to pay grade E-l, forfeiture of all pay and allowances, and a bad-conduct discharge.
On review, the United States Army Court of Criminal Appeals affirmed.[1]
We granted review of the following issue: WHETHER THE MILITARY JUDGE COMMITTED PLAIN ERROR BY PERMITTING THE GOVERNMENT TO OFFER EVIDENCE IN THE FORM OF OPINION TESTIMONY FROM SENIOR OFFICER AND NCO WITNESSES WITH NO PERSONAL KNOWLEDGE OF APPELLANT’S DUTY PERFORMANCE TO OPINE THAT HE SHOULD BE SEPARATED FROM THE ARMY AND SPECIAL FORCES.
In addition, the Government certified the following issue:
WHETHER THE RESTRICTIONS UNDER R.C.M. 1001(b)(5) APPLY TO REBUTTAL EVIDENCE SUBMITTED UNDER R.C.M. 1001(d) AND WHETHER THE U.S. ARMY COURT OF CRIMINAL APPEALS ERRED IN FINDING THAT THE MILITARY JUDGE COMMIT[T]ED PLAIN AND OBVIOUS ERROR WHEN HE PERMITTED INTRODUCTION OF GOVERNMENT REBUTTAL TESTIMONY TO DEFENSE “RETENTION EVIDENCE” WHEN THERE WAS NO DEFENSE OBJECTION.
In our view the legal questions at the root of these issues were addressed in United States v. Griggs, 61 M.J. 402 (C.A.A.F.2005). Thus the question presented here is how the Griggs analysis applies to these facts. For the reasons stated below we conclude that if any errors with regard to a lack of foundation for lay opinions were clear and obvious, they did not substantially influence the adjudged sentence.
BACKGROUND
Appellant was a Special Forces medic who had served in the Army for eighteen years. In March 2006, Appellant had been living with his girlfriend Loren R. Masden for two years. She and Appellant exchanged various *196 computer passwords as a sign of trust. On March 4, 2006, while Appellant was at “Pinon Canyon training site in Trinidad,” Masden logged onto Appellant’s laptop and discovered images of child pornography on the computer. She immediately called her sister, who came to Masden and Appellant’s home and also saw the images. Masden testified that her sister saw a digital fingerprint indicating that the pictures were downloaded on February 14, 2006, a time at which Appellant had been in North Carolina for training. Masden was upset and went to stay at her sister’s, returning a few days later to pack her things. On March 8, 2006, she reported the images to law enforcement.
Appellant testified that at the time the images were downloaded, he was in training and occasionally did not have possession of his laptop or remote storage drives, and that some of the images may have been downloaded unintentionally while intending to download- adult pornography and other materials from a file-sharing website. There were over 1,700 pornographic images found on Appellant’s computer that depicted children. These images included various forms of child pornography including anal, oral, and vaginal penetration of children under the age of two.
The members found Appellant guilty of the charged offenses. At sentencing Appellant introduced testimony from three mitigation witnesses, each of whom basically testified that in his opinion, Appellant should be retained in the armed forces. Master Sergeant (MSG) Willie D. Gibbons, a member of 3d Battalion, 10th Special Forces Group, stated among other things, “I’ve already packed his bags ... I would take him on my team in a minute,” and “Just like an alcoholic ... I think, you know, something needs to be done.... Past that, I think he needs to stay in the service.” Captain Timothy J. Coff-man, the battalion physician assistant, stated, “He is my best medic” and “I think we should rehabilitate him.... I mean, he’s a great soldier. He has a great service record as far as military activities.” Sergeant First Class Shawn Dishman, a member of Appellant’s company, whose testimony was admitted through a stipulation of expected testimony stated:
I definitely think that there is a place for [Appellant] in the Army and within the 10th Special Forces. I truly believe that Special Forces is the only place for SFC Eslinger.
I would be proud to serve with him in the future despite this conviction.... [I] would welcome him to my team any day.
In rebuttal to Appellant’s mitigation evidence, the Government introduced testimony from five witnesses. Major (MAJ) Isaac J. Peltier, the acting battalion commander of 3rd Battalion, 10th Special Forces Group, Appellant’s battalion, stated:
It is my opinion that, clearly [Appellant] should not deploy to combat with this organization. ... And for that matter, he should not return to this — the 3rd Battalion. And I’ll go a step further in my opinion, based on his pattern of misconduct, he shouldn’t even be in the Army.
Sergeant Major (SGM) Jason M. Krider, Appellant’s battalion command sergeant major (CSM), testified, “There is no place in our ranks for Sergeant Eslinger.” MSG Timothy D. Stensgaard, one of the two team sergeants of the tactical support detachment in the 10th Special Forces Group testified, “As a leader in the United States Army, I don’t feel that based on his prior incidences and this conviction how he [sic] could remain in the U.S. Army and effectively serve.” Colonel (COL) Kenneth E. Tovo, group commander of the 10th Special Forces Group, testified:
Sergeant Eslinger’s got a good reputation as a soldier, particularly a combat soldier, in the Group. However_ [Y]ou just listed four fairly significant instances of ill-discipline, and frankly, that’s more chances than we allow a guy.... I just find that ... his ill-discipline is incompatible with continued service, certainly within the 10th Group.
CSM Charles M. Sekelsky, the group command sergeant major, testified, “I think he’s embarrassed the regiment and the United *197 States Army for his actions.”[2] In addition, on cross-examination defense counsel elicited agreement from the sergeant major that Appellant was an exceptional medic and an exceptional team member when deployed in a combat zone. Defense counsel specifically asked CSM Sekelsky, “If you could put him in a can and take him to Iraq and only open him up in Iraq, you’d prefer to do it that way, wouldn’t you?” To which he responded, “Yes.”
With two exceptions, defense counsel did not object to the testimony of these witnesses. Following SGM Krider’s testimony the military judge asked, “Any issues with the sergeant major’s testimony?” Defense counsel, citing Rule for Courts-Martial (R.C.M.) 1001(b)(5), responded with a request that the military judge instruct the members to disregard the testimony because the offenses of which Appellant was found guilty formed the principal basis for SGM Krider’s opinion. Following an Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2006), session to discuss the matter, the military judge instructed the members to disregard SGM Kri-der’s testimony. In addition, prior to CSM Sekelsky’s testimony the military judge asked trial counsel for an offer of proof as to what the witness would testify. Defense counsel objected to CSM Sekelsky’s expected testimony as cumulative since the members had just heard from the Group commander, COL Tovo. In counsel’s view, the colonel had already testified as to the consensus of the command. The military judge overruled this specific defense objection noting that CSM Sekelsky “appears to have some closer connection with the accused.” Immediately after ruling on this objection to the witness’s testimony, the military judge asked defense counsel specifically, “Any other objections, defense?” Defense counsel responded, “No, sir.”
At the close of the sentencing case, although the defense requested a number of specific instructions they did not request a specific instruction regarding the Government’s rebuttal evidence. With respect to the sentencing evidence, the military judge provided the standard instruction to “consider all matters in extenuation and mitigation as well as those in aggravation.” He also instructed the members to consider, among other things, evidence of Appellant’s good military character, his combat record, and his record in the service for bravery.
Before the Court of Criminal Appeals Appellant challenged the admission of the Government’s rebuttal evidence on the ground that the witnesses did not have adequate foundations to provide their opinions as to whether Appellant should be retained in the armed forces. Eslinger, 69 M.J. at 523-24. The lower court, sitting en banc and without distinguishing between the various rebuttal witnesses, found “clear and obvious error in the admission of evidence which both lacked foundation and raised command influence concerns, without proper limiting instruction[s].” Id. at 535. However, after a detailed review for prejudice, that court concluded that any errors were harmless. Id. at 536.
Before this Court Appellant renews his argument that the military judge committed plain error in allowing the testimony of the rebuttal witnesses. First, Appellant argues the witnesses lacked an adequate foundation to form and offer an opinion on retention. Second, he argues that the restrictions on evidence of rehabilitative potential contained in R.C.M. 1001(b)(5) apply to Government rebuttal as well as to the Government’s sentencing case-in-ehief. Finally, Appellant challenges the lower court’s conclusion that any errors were harmless. For its part, the Government challenges the lower court’s conclusion that the limitations in R.C.M. 1001(b)(5) apply to otherwise properly admitted rebuttal evidence.
DISCUSSION
 A military judge’s decisions to admit or exclude evidence are reviewed for an abuse of discretion. United States v. Ediger, 68 M.J. 243, 248 (C.A.A.F.2010). Failure to object to the admission of evidence at trial forfeits appellate review of the issue absent *198 plain error. United States v. Kasper, 58 M.J. 314, 318 (C.A.A.F.2003) (citation omitted); United States v. Halford, 50 M.J. 402, 404 (C.A.A.F.1999); United States v. Raya, 45 M.J. 251, 253 (C.A.A.F.1996).
1?. C.M. 1001(b) (5) and Rebuttal Evidence
We begin our analysis with the threshold question as to whether R.C.M. 1001(b)(5) bars the Government from introducing testimony of the type and quality in this case in rebuttal to defense retention evidence. If so, there is no need to consider whether there was a proper foundation for doing so.
Evidence that goes toward the accused's rehabilitative potential is permissible at sentencing. "The trial counsel may present, by testimony or oral deposition in accordance with R.C.M. 702(g)(1), evidence in the form of opinions concerning the accused's previous performance as a servicemember and potential for rehabilitation." R.C.M. 1001(b)(5)(A), However, "A witness may not offer an opinion regarding the appropriateness of a punitive discharge or whether the accused should be returned to the accused's unit." R.C.M. 1001(b)(5)(D). In United States v. Ohrt, 28 M.J. 301 (C.M.A.1989), the Court concluded that this restriction applies to both government and defense sentencing evidence. "[A] witness-be he for the prosecution or the defense-should not be allowed to express an opinion whether an accused should be punitively discharged." Id. at 304-05. "[A]ppropriateness of punishment" is an issue to be decided by the members and "cannot be usurped by a witness." Id. at 305.
However, in Griggs, we held that "R.C.M. 1001(b)(5)(D) does not apply to defense mitigation evidence, and specifically does not preclude evidence that a witness would willingly serve with the accused again." 61 M.J. at 409. This conclusion was based in part on the fact that "so-called `retention evidence' is classic matter in mitigation, which is expressly permitted to be presented by the defense." Id. However, we reached this conclusion with three important cautionary caveats.
First, "there can be a thin line between an opinion that an accused should be returned to duty and the expression of an opinion regarding the appropriateness of a punitive discharge." Id. Second, concerns raised with respect to this distinction "can be addressed with a tailored instruction focusing on the distinction between a punitive discharge, which is for the members to decide, and the willingness of a servicemember to serve with an accused again." Id. Third, and most importantly for the purpose of this case, we directly responded to the Government's argument in Griggs that if the defense were allowed to admit such evidence the Government would be without recourse. We stated:
Consistent with the historical concerns regarding command influence, the Government is free to rebut such assertions. As stated in [United States v.] Aurich,[3] "if an accused `opens the door' by bringing witnesses before the court who testify that they want him or her back in the unit, the Government is permitted to prove that that is not a consensus view of the command."
Id. at 410 (footnote added). We continue to adhere to this view. As in other contexts, where a party opens the door, principles of fairness warrant the opportunity for the opposing party to respond, provided the response is fair and is predicated on a proper testimonial foundation. See United States v. Blau, 5 C.M.A. 232, 244, 17 C.M.R. 232, 244 (1954) (otherwise "an accused would occupy the unique position of being able to `parade a series of partisan witnesses before the court' without the slightest apprehension of contradiction or refutation").
In this case, the defense counsel opened the door to rebuttal through testimony from its witnesses indicating that they would gladly serve with Appellant again. Therefore the Government was free to rebut with proper evidence that this was not the consensus of the command.
Three concerns warrant emphasis. First, when the government's evidence in *199 rebuttal to defense retention evidence is testimony of the accused’s commander, it may well “raise the specter of command influence.” Griggs, 61 M.J. at 408 (citation omitted). However, we hasten to note that evidence that the defense witnesses’ views are “not a consensus view of the command” simply means that retaining the accused is not the view of every member of the command. See id. at 410 (citation and quotation marks omitted). It does not necessarily mean that the government may parade the commanding officer and the rest of the accused’s chain of command to have them give a command view on retention. That would depend on just how wide the defense opened the door.
Second, to be clear, a commander may testify, but it is essential for the military judge to be on guard for the possibility, intended or not, that a commander’s testimony could convey undue command influence to the members. While not an absolute requirement, a tailored instruction from the military judge can ameliorate these risks and clarify the scope of permissible opinions. Where the government calls a number of senior command representatives, trial counsel should assess which and how many are necessary to rebut the defense contention that the accused should be retained in the service.
Third, “ ‘The Military Rules of Evidence [M.R.E.] are applicable to sentencing ... thus providing procedural safeguards to ensure the reliability of evidence admitted during sentencing.’” United States v. Saferite, 59 M.J. 270, 273 (C.A.A.F.2004) (alteration in original) (quoting United States v. McDonald, 55 M.J. 173, 176 (C.A.A.F.2001); Manual for Courts-Martial, United States, Analysis of the Rules for Courts-Martial app. 21 at A21-69 (2002 ed.)). Thus, a lay witness must always have a proper foundation to offer an opinion. See M.R.E. 701.
In sum, although rebuttal testimony of the type in this case may raise some of the same concerns addressed by R.C.M. 1001(b)(5), that is different than concluding that this rule specifically applies to rebuttal evidence. We conclude that it does not. Rebuttal is governed by R.C.M. 1001(d), which does not contain the same restrictions as R.C.M. 1001(b)(5).

Foundation for Opinions

M.R.E. 701(a) requires that lay witness opinions or inferences be limited to those that are “rationally based on the perception of the witness.” In similar fashion, M.R.E. 602 provides that “[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.” See also Ohrt, 28 M.J. at 306 (discussing a parallel requirement found in R.C.M. 1001(b)(5)(B) that “the opinion envisioned by R.C.M. 1001(b)(5) can only be expressed by a witness who has a rational basis for his conclusions, founded upon the accused’s service performance and character”). As the Court of Criminal Appeals stated, “in the absence of such a foundation outlining these witnesses’ personal knowledge of appellant’s background or character, their subsequent testimony both lacks probity and increases the potential for prejudicial misuse of their opinions.” Eslinger, 69 M.J. at 533 (footnote omitted). Appellant argues that the Government’s witnesses did not have sufficient personal knowledge of the accused to proffer the opinions offered. We consider the testimony of each of the witnesses in issue.
WTien asked the basis of his knowledge, MAJ Peltier agreed with the premise of the question that his opinion stemmed from what he “learned from Colonel Stoltz and the prosecutors in this case,” as well as “knowledge of the unit ... [w]e’re very small.” MSG Stensgaard testified that he knew Appellant because “We did quite a bit of pre-mission training together prior to the OIF III deployment” and was aware of his two previous citations for drunk driving and criminal trespass conviction.
COL Tovo testified that he knew who Appellant was and that he had a “good reputation as a soldier, particularly a combat soldier.” When asked the basis of his opinions, he stated “[Y]ou just listed four fairly significant instances of ill-discipline, and frankly, that’s more chances than we allow a guy.”
*200 SGM Krider stated that his opinion was based on the convictions for child pornography in this case, his “record of DUIs” and his criminal trespass conviction. The military judge sustained defense counsel’s objection to SGM Krider’s testimony and instructed the members to disregard it. Any infirmity with this testimony was cured by the military judge’s instruction and there is no indication in the record that the members did not follow the instruction. United States v. Taylor, 53 M.J. 195, 198 (C.A.A.F.2000) (court members are presumed to follow the military judge’s instructions); United States v. Holt, 33 M.J. 400, 408 (C.M.A.1991).
CSM Sekelsky testified that he deployed with Appellant to Baghdad and “would see him occasionally at FOB 103.” He stated that he had occasional conversations with Appellant “[I would] just say, ‘Hi. How’re you doing,’ when I would see him_” Although defense counsel objected to the testimony as cumulative, when asked if there was any other objection to the testimony, counsel replied “No, sir.” Thus any additional claimed infirmity regarding this testimony was affirmatively waived and is not subject to plain error review.[4]
In the case of MSG Stensgaard the foundational basis for the testimony was evident based on the structure of Special Forces units and the role of senior enlisted personnel within these commands. MSG Stens-gaard was Appellant’s team sergeant for two years, trained with Appellant and deployed with him to Iraq. In short, this senior enlisted Special Forces soldier had a substantial personal foundation on which to render his opinions.
The testimony of COL Tovo and MAJ Peltier present closer questions.
According to MAJ Peltier’s testimony, his opinion of Appellant was based on what he learned from others as well as knowledge of the unit. Although not presenting the most compelling case, absent objection, it was not unreasonable for the military judge to infer that the executive officer of a Special Forces battalion would have direct and personal knowledge of a senior enlisted member in the command.
COL Tovo’s testimony was based on his standing as 10th Special Forces Group commander. According to COL Tovo the authorized medic strength for the Group was eighteen. His Group was below strength. In response to leading questions, COL Tovo indicated that his knowledge of Appellant was based on Appellant’s reputation in the command. He did not state that he had direct personal knowledge of Appellant. In our view, COL Tovo’s foundation in the record for expressing a personal opinion about Appellant was not as strong as it could have been. However, in the context of plain error review and in the context of the tightly knit and relatively small units that comprise the Army Special Forces community, in this case, the 10th Special Forces Group, we are not prepared to conclude, absent a record indicating otherwise, that the military judge abused his discretion in admitting the Group commander’s testimony.
We agree with Appellant and the Court of Criminal Appeals that lay opinions must be derived from direct observation and judgment, but the military judge did not commit plain error by admitting the testimony of COL Tovo, MAJ Peltier, or MSG Stens-gaard. Restated, it is not evident that there was a clear and obvious basis to exclude their testimony for lack of foundation.
In any event, we need not ultimately determine if any of the admitted rebuttal testimony was obvious error, for even if so, any error was harmless.

Prejudice Analysis

Under the plain error test, after finding plain or obvious error we test for prejudice. That is, “We test the erroneous admission or exclusion of evidence during the *201 sentencing portion of a court-martial to determine if the error substantially influenced the adjudged sentence.” Griggs, 61 M.J. at 410.
While we do not find plain or obvious error in this case, for the sake of appellate thoroughness we consider the third prong of the plain error test, recognizing that opinions may reasonably vary as to whether an error was clear or obvious in the first instance. Where command influence concerns are raised, the application of prejudice analysis will also enhance confidence in the fairness of the system.
Prejudice analysis is also useful because, as we recognized in Griggs, the line between an opinion on whether an accused should be returned to service or punitively discharged is a thin one. 61 M.J. at 409. Indeed the line can appear obscure if testimony that the accused is unworthy of continued service is viewed as a euphemism for a punitive discharge, as it no doubt often is. Intuitively, there is a certain fiction to the premise that the members will readily distinguish between an opinion on continued service and an opinion that the accused should be punitively discharged. But it is a distinction that we are confident that properly instructed members are capable of making. Here, the Government came closest to the line by asking each witness, “Do you want him in the Army?” But in the context of the defense witnesses stating their desire to have Appellant stay in the Army, this was not obvious error on rebuttal.
As we weigh the factors in determining whether, if there was error, it was prejudicial, we weigh factors on both sides. On the one hand, Appellant’s combat service offered significant mitigation for members to consider on sentencing. He was a senior enlisted soldier with combat service as a medic. He had three combat tours and was awarded the Bronze Star with combat V. Finally, if the testimony in question was error, it came from senior officers in Appellant’s chain of command, which in theory makes their testimony more likely to influence the members.
On the other hand, we find six factors that cut against a conclusion that Appellant was prejudiced. First, Appellant’s possession of child pornography was extensive. As noted by the lower court, Appellant collected it over time and in multiple locations. Eslinger, 69 M.J. at 524. It included over 1,700 images, including infants being sodomized and vaginally penetrated. Second, Appellant did not make the case that his conduct was in some manner the result of his combat experience. Third, Appellant faced a maximum punishment of thirty years of confinement, forfeiture of all pay and allowances, reduction to the lowest enlisted grade E-l, and a dishonorable discharge; he received three years of confinement, forfeiture of all pay and allowances, reduction to the lowest enlisted grade E-l, and a bad-conduct discharge. Fourth, Appellant had an extensive record of prior misconduct. This record included two General Officer Memoranda of Reprimand (GOMOR) for driving under the influence in 1999 and driving while intoxicated in 2004, and a stipulation of fact reflecting a civilian conviction in 2004 for third-degree criminal trespass. In addition, the military judge gave a standard instruction to the members to guide them in their decision on whether to award a punitive discharge and, if so, what kind. Finally, and relevant to all the other factors, Appellant was sentenced by a panel of six experienced members, including a colonel, two lieutenant colonels, a major, and two sergeants major.
Considering these factors in the context of the test set out in United States v. Kerr, 51 M.J. 401, 405 (C.A.A.F.1999), while we do not assume error, we agree with the lower court’s assessment: the possibility Appellant would have received less confinement or would have avoided a punitive discharge, absent the rebuttal testimony, was remote. We are confident that the testimony of COL Tovo, MAJ Peltier, or MSG Stensgaard did not substantially influence the members’ judgment on the sentence.
CONCLUSION
In view of the above, the decision of the United States Army Court of Criminal Appeals on the findings and the sentence is affirmed.

. United States v. Eslinger, 69 M.J. 522, 536-38 (A.Ct.Crim.App.2010).

. CSM Sekelsky had also been Appellant's previous battalion command sergeant major.

. 31 M.J. 95, 96-97 (C.M.A.1990).

. See United States v. Campos, 67 M.J. 330, 333 (C.A.A.F.2009). However, we note that CSM Sekelsky's opinion was based on his testimony that he was the command sergeant major of the 3d Battalion at the time of Appellant's Operation Iraqi Freedom III deployment to Iraq. In tins capacity, he would "see him occasionally” and of course was privy to the sort of information about senior noncommissioned officers that a command sergeant major is responsible for knowing.