# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
KERN, BERG, and YOB
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Staff Sergeant RODGER S. DANES**
**United States Army, Appellant**

ARMY 20091072

Headquarters, Fort Bliss
Michael J. Hargis, Military Judge
Colonel Michael J. Benjamin, Staff Judge Advocate (pretrial)
Lieutenant Colonel Jeffrey A. Miller, Acting Staff Judge Advocate (post-trial)

For Appellant:  Colonel Mark Tellitocci, JA; Lieutenant Colonel Imogene M. Jamison, JA; Lieutenant Colonel Peter Kageleiry, Jr., JA; Captain Tiffany K. Dewell, JA (on brief).

For Appellee:  Major Amber J. Williams, JA; Major Ellen S. Jennings, JA; Captain Nathan S. Mammen, JA (on brief).

23 November 2011

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

BERG, Judge:

> Oh what a tangled web we weave,
> When first we practise to deceive![1]

A military judge sitting as a special court-martial convicted appellant in accordance with his pleas of one specification of false official statement and one specification of wearing an unauthorized Ranger tab in violation of Articles 107 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 907 and 934 (2008) [hereinafter UCMJ].  The military judge convicted appellant contrary to his pleas of one

---

[1] Sir Walter Scott, *Marmion, Canto vi. Stanza 17*. Scottish author & novelist (1771 - 1832).

specification of false official statement, one specification of larceny of military property (the difference between the lawful pay appellant was entitled to as an E6 and the stolen pay he fraudulently received at the pay grade of E7) of a value in excess of $500.00, and three specifications of wearing unauthorized badges or ribbons, in violation of Articles 107, 121, and 134, UCMJ, 10 U.S.C. § 907, 921, and 934 (2008).  Appellant was acquitted of two specifications of wearing unauthorized badges, in violation of Article 134, UCMJ (2008).  The military judge sentenced appellant to a bad-conduct discharge, confinement for three months, and reduction to E1.  The convening authority approved the sentence as adjudged.  This case is before this court for review pursuant to Article 66(c), UCMJ.

### BACKGROUND

This case involves the consequences of "fraudulent self-glorification."  Appellant voluntarily and knowingly re-enlisted in the U.S. Army active component in January 2009 at a pay grade, E6, which was lower than the E7 pay grade he had held in the U.S. Army reserves.  Once his contract of enlistment was approved, appellant set out to incorporate counterfeit documents into his personnel records to support higher rank and pay.  He compounded  this attempt at "self-promotion" by the wearing of ribbons, badges and devices to which he was not entitled, including the Ranger tab, the Bronze Star ribbon with "V" device, the Combat Medic Badge (3d Award) and the Parachutist Badge with service star (indicating a combat jump).[2]  To counter defense claims that appellant merely had a confusing time at the ribbon rack at clothing sales, the government showed that appellant procured from the Internet a false Ranger School course completion certificate which he then submitted to personnel clerks along with an altered re-enlistment contract, DD Form 4/1, reflecting entry at the E7 pay grade.  Less than two years before his re-enlistment, appellant received non-judicial punishment after wearing the Ranger tab and the Third Ranger Battalion scroll without authorization.  He also had been counseled concerning false claims that he had been a medic in Somalia during the Black Hawk Down incident and had made a combat jump into Panama during Operation Just Cause.[3]

Appellant raises one assignment of error which merits discussion but no relief:

_____

[2] Appellant had legitimately received a Bronze Star medal for merit, not valor, and a Combat Action Badge for service in Kuwait and Iraq in 2003.  Although trained as a medic, appellant never served in a combat zone in that Military Occupational Specialty.

[3] Appellant had been in the 82d Airborne Division during the time of Just Cause but was serving as a cornet player in the band and not as a paratrooper in Panama.  There was similarly no record showing he had ever been in Somalia.

WHETHER THE MILITARY JUDGE COMMITTED PLAIN ERROR BY PERMITTING THE GOVERNMENT TO OFFER EVIDENCE IN THE FORM OF IMPROPER OPINION TESTIMONY FROM SENIOR OFFICER AND NCO WITNESSES THAT APPELLANT SHOULD NOT BE RETAINED IN THE ARMY.

In light of our superior court's recent decision in *United States v. Fosler*, 70 M.J. 225 (C.A.A.F. 2011), we have also reviewed the specifications alleging violations of Article 134, UCMJ of which appellant was found guilty. Per our discussion below, we find none of the specifications so defective as to warrant dismissal.

## DISCUSSION

After the military judge found appellant in large part guilty as charged, appellant called five witnesses during his presentencing case to offer retention evidence. Because appellant had over twenty years' combined active and reserve service, the crux of sentencing was the potential sentence of a punitive discharge - this cuts off entitlement to any reserve retired pay at age sixty. *See* 10 U.S.C. § 12740. At appellant's behest, three sergeants major, a master sergeant, and a sergeant first class each recommended appellant's retention in the Army and stated that they would unhesitatingly serve and deploy with him.

The government countered with the testimony of Major (MAJ) L, First Sergeant (1SG) A, and Colonel (COL) R. MAJ L, who had been appellant's company commander in 2006, testified that he would not want appellant in his unit in any capacity. 1SG A, appellant's first sergeant when appellant arrived at Fort Bliss after most recently reentering active duty, initially testified in aggravation that he did not think appellant understood the Army Values based on his misconduct but had varied between an average and an outstanding duty performer. When recalled for rebuttal after appellant's pro-retention witnesses had testified, 1SG A stated without objection that appellant should not be retained in the United States Army.

COL R was appellant's battalion commander from 2006 to 2007 when appellant had been a drill sergeant on active duty. He had imposed non-judicial punishment on appellant in July 2007 after finding him guilty of an earlier unauthorized wear of the Ranger tab and the Third Ranger Battalion combat scroll.[4] COL R testified telephonically from Iraq during the merits portion of the trial and again at the presentencing phase but before appellant put on his retention testimony. When asked about appellant's rehabilitative potential, COL R replied non-

---

[4] Appellant was punished with the forfeiture of $1822.05 for two months.

responsively that appellant had zero potential for further service in either the active or the reserve components. The military judge immediately cut off the testimony and stated that he would disregard it. The military judge refused trial counsel's request to allow COL R to talk about retention in anticipation that the defense would "open the door" and instructed counsel to confine his questions to Rule for Court-Martial [hereinafter R.C.M.] 1001(b)(5) rehabilitation potential.

COL R was unavailable during the rebuttal portion of the government's case but provided trial counsel with an e-mail expressing his adverse opinion on whether appellant should be retained in the Army.[5] After the defense requested relaxation of the rules of evidence in its mitigation and extenuation case, the military judge allowed the government to introduce this e-mail but limited its consideration:

> Military Judge: Well, now is the time, Captain Godbey [defense counsel]. Do you have an objection to that or not? I am going to consider if (sic), absent objection from the defense, I am not going to consider Prosecution Exhibit 29 for identification in its entirety. I will consider it only to the extent that it conveys the opinion of Colonel Royalty that the accused does not have the capacity for further productive service in the United States Army.

> Defense Counsel: No objection, Your Honor.

At the time the parties briefed this matter, our higher court had heard argument but had not yet rendered its opinion in *United States v. Eslinger*, 70 M.J. 193 (C.A.A.F. 2011). With the benefit of that decision, we are convinced that the careful trial judge committed no error at all, much less plain error, in receiving rebuttal testimony that appellant ought not to be retained.

---

[5] Trial counsel sent the following e-mail request to COL R: "At this point in the trial I would like to enter a written statement from you regarding SSG Danes into evidence. Should he be retained in the army and why or why not?" COL R replied: "SSG Danes should not be retained or allowed to retire. His latest misconduct is not an isolated incident, he has a career of deception and dishonesty. I personally gave him a second chance in 2007 to save his career, however unfortunately he continued the path of fraudulent self-glorification. Thousands of Soldiers have died obtaining the badges Danes falsely wore. His actions dishonored their sacrifice and are a disgrace to the United States Army and the values we stand for. Therefore, again, he should not be able to serve in any capacity within our Army or reap the benefits of a fraudulent career. He is an embarrassment to all who have served this great nation honorable [sic]." Prosecution Exhibit 29.

We note that each of the government's witnesses rendered his lay opinion on an adequate foundation of direct personal knowledge of appellant, his character and his duty performance. *See* Military Rule of Evidence 701. As trial was to the military judge alone, we have no "specter" of unlawful command influence to cloud the impact of the testimony on the trier of fact. *See, e.g., United States v. Griggs*, 61 M.J. 402, 408 (C.A.A.F. 2005).

Most significantly, the defense opened the door to the government's rebuttal evidence. Although *Griggs* makes it clear that retention testimony of the kind offered by appellant in this case is "valuable" and proper mitigation evidence, it comes with attendant risk. *Griggs*, 61 M.J at 410 (*citing United States v. Aurich* 31 M.J. 95, 96-97 (C.M.A. 1990)). Once the issue of retention is put in play by the defense, the government has license, within limits, to respond with witnesses "to prove that it is not a consensus view of the command." *Aurich*, 31 M.J. at 97. Appellant's suggestion that R.C.M. 1001(b)(5)(D) prohibits the government from introducing retention evidence on rebuttal is wrong.

Our higher court makes it clear that "[r]ebuttal is governed by R.C.M. 1001(d), which does not contain the same restrictions as R.C.M. 1001(b)(5)." *Eslinger*, 70 M.J. at 199. Appellant's witnesses recommended retention and the government's witnesses recommended against retention. No government witness suggested a particular characterization of discharge and it is apparent from the record in this case that the military judge adjudged the punitive discharge as part of the appropriate punishment for the entirety of appellant's misconduct including the pay larceny that the military judge found appellant had committed.

### *FOSLER*

In Charge III, appellant was charged with seven specifications of unauthorized wear of various badges, tabs, and decorations upon his uniform in violation of Article 134, UCMJ. Appellant was found guilty pursuant to his plea of Specification 3 and was convicted contrary to his pleas of Specifications 2, 4, and 6.[6] Whether a charge and specification state an offense is a question of law that is reviewed de novo. *United States v. Roberts*, __ M.J. ___, slip op. at 4 (Army Ct. Crim. App. 14 Oct. 2011). Together, the charge and specification must "allege every element of the offense either expressly or by necessary implication, so as to give the accused notice and protect him against double jeopardy." *Id*. (quoting *United States v. Dear*, 40 M.J. 196,197 (C.M.A. 1994)); R.C.M. 307(c)(3). Also, where a charge and specification are not challenged at trial, their language is to be liberally

---

[6] Specification 1 of Charge III was dismissed prior to arraignment and appellant was found not guilty of Specifications 5 and 7 of Charge III.

construed. *Id*. (citing *United States v. Watkins*, 21 M.J. 208, 209-10 (C.M.A. 1984)). *Cf. Fosler,* 70 M.J. at 230.

Under the circumstances of this case, we conclude there was sufficient evidence in the record that appellant was on notice of the charges against him. He made no objection to the charges at trial. In addition, reference was made to the lack of authority and wrongfulness of the conduct in each of the specifications and as a violation of Article 134, UCMJ in the charge. Moreover, during the providence inquiry of the specification to which the appellant pleaded guilty, the military judge advised appellant of the elements of the offense, to include the terminal elements and the appellant described how his conduct was prejudicial to good order and discipline and agreed his conduct was service discrediting. Lastly, the factual allegations within each specification sufficiently protect appellant from double jeopardy.

## DECISION

On consideration of the entire record, the briefs submitted by the parties on the assignment of error, and *United States v. Fosler,* we hold the findings of guilty and sentence adjudged and as approved by the convening authority to be correct in law and fact. Accordingly, the findings of guilty and the sentence are AFFIRMED.

Senior Judge KERN and Judge YOB concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

Clerk of Court

6