# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

————————————

## No. 201500177

————————————

## UNITED STATES OF AMERICA
Appellee

v.

## MARVIN C. DIAS
Logistics Specialist Second Class (E-5), U.S. Navy
Appellant

————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Captain Robert E. Blazewick, JAGC, USN.
Convening Authority: Commander, Navy Region Southeast, Naval
Air Station, Jacksonville, FL.
Staff Judge Advocate's Recommendation: Commander Nell O. Evans,
JAGC, USN.
For Appellant: Lieutenant Doug R. Ottenwess, JAGC, USN.
For Appellee: Commander Serajul F. Ali, JAGC, USN; Major Cory A.
Carver, USMC.

————————————

Decided 31 August 2017

————————————

Before HUTCHISON, FULTON, and RUSSELL, *Appellate Military Judges*

————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

————————————

PER CURIAM:

A military judge, sitting as a general court-martial, convicted the appellant, pursuant to his pleas, of: one specification each of conspiracy to steal and sell military property; disrespect toward a commissioned officer; disobeying a commissioned officer; disobeying a noncommissioned officer; four specifications of violation of a lawful general order; and one specification each

of sale of military property and theft of military property, in violation of Articles 81, 89, 90, 91, 92, 108, and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 889, 890, 891, 892, 908, and 921. The military judge also convicted the appellant, contrary to his pleas, of: one specification of sexual assault; two specifications of abusive sexual contact; two specifications of assault consummated by a battery; and one specification of indecent language, in violation of Articles 120, 128, and 134, UCMJ, 10 U.S.C. §§ 920, 928, and 934. The military judge sentenced the appellant to reduction to pay grade E-1, 50 months' confinement, and a dishonorable discharge.

This case is before us a second time. We previously found that the staff judge advocate's recommendation and the convening authority's action contained error, and we returned the record for new post-trial processing. *United States v. Dias*, No. 201500177, 2015 CCA LEXIS 536, unpublished op. (N-M. Ct. Crim. App. 30 Nov 2015) (per curiam). The new post-trial processing is now complete, and we have conducted our review under Article 66, UCMJ.

The appellant has assigned two errors: first, that the military judge erred by admitting text messages as excited utterances; and, second, that the appellant received ineffective assistance of counsel because his trial defense counsel stipulated to the expected testimony of a witness against him. We find that the findings and sentence are correct in law and fact and that no error materially prejudiced the substantial rights of the appellant. Arts. 59(a) and 66(c), UCMJ.

## I. BACKGROUND

Both assignments of error pertain to the appellant's conviction for sexually assaulting Seaman (SN) KB in a barracks room while the appellant and SN KB were conducting room inspections together. According to SN KB's testimony, during the room inspections, the appellant told SN KB that he wanted in her "cookie,"[1] and later touched her on the buttocks twice during the inspections. SN KB told the appellant to stop. While still inspecting the final room, the appellant approached SN KB from behind and placed one hand up SN KB's shirt and the other hand into her pants between her legs. The appellant and SN KB ended up on a bed and, although SN KB repeatedly told the appellant that she did not want to have sex with him, the appellant had sexual intercourse with her anyway.

After the assault, SN KB returned to her barracks room in the same building. She called her mother and then, within ten or fifteen minutes of

---

[1] Record at 384.

having been assaulted, began a series of text messages to her friend, SN DR. These text messages, in which SN KB tells her friend that the appellant had sex with her after she told him to leave her alone, were admitted by the military judge as excited utterances over the appellant's objection.

At trial, defense counsel stipulated to the expected testimony of SN KB's roommate. In the stipulation, the parties agreed that the roommate, had she been called, would have testified that on the day of the assault, SN KB came to the laundry room where the roommate was washing her clothes. According to the stipulated testimony, SN KB told the roommate, "'I don't want to tell anyone, you have to promise not to tell anyone,' and then said that [the appellant] forced her to have sex."[2] The stipulated testimony also indicates that a third Sailor who had also been inspecting rooms saw the appellant touching SN KB's buttocks. This information tended to contradict the in-court testimony of this third Sailor, who testified that he saw the appellant touch SN KB on her side, but did not see him touch her buttocks. The appellant now claims that his counsel were ineffective by stipulating to the roommate's expected testimony.

## II. DISCUSSION

### A. Admission of the text messages

The appellant argues that the military judge erred by admitting the text messages SN KB sent to her friend after the assault. The government, in the face of a defense objection, told the military judge that the texts were excited utterances, and therefore admissible as an exception to the bar on hearsay. The military judge admitted the texts without performing any on-the-record analysis of their admissibility.

Decisions of a military judge to admit or exclude evidence are reviewed for abuse of discretion. *United States v. Eslinger*, 70 M.J. 193, 197 (C.A.A.F. 2011). In reviewing evidentiary rulings under this standard, we typically review the military judge's findings of fact under a *clearly erroneous* standard, and his conclusions of law *de novo*. *United States v. Owens*, 51 M.J. 204, 209 (C.A.A.F. 1999). Where, as here, the military judge does not make his findings on the record, we give less deference to the military judge. *See generally United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000) (military judges who fail to articulate MILITARY RULE OF EVIDENCE 403 balancing test findings on the record receive less deference on review).

Out-of-court statements may be admissible as excited utterances if they meet the three-prong test established by *United States v. Arnold*:

---

[2] Prosecution Exhibit (PE) 1.

> (1) the statement must be spontaneous, excited, or impulsive rather than the product of reflection and deliberation;
>
> (2) the event prompting the utterance must be startling, and;
>
> (3) the declarant must be under the stress of excitement caused by the event.

25 M.J. 129, 132 (C.M.A. 1987).

Applying these factors, we conclude that the military judge did not err in admitting the text messages. First, we find that the text messages were impulsive, and not the product of reflection and deliberation. SN KB testified that when she went back to her room after the assault she was upset, confused, and crying. She called her mother and then wrote the texts. The text messages began at 10:06 am. According to SN KB's testimony, the first text was sent within fifteen minutes of the sexual assault. SN KB's self-described emotional state—her confusion, her crying, and her initial impulse to go to her room, call her mother, and then text a friend—support a finding that the text messages were spontaneous, excited, and impulsive rather than the product of reflection and deliberation.

The second prong is easily met. The event that prompted the utterance was startling; it was the sexual assault itself.

The third prong is also met. The messages themselves indicate that SN KB had just been sexually assaulted, that she had hit and scratched her attacker; that at the time of the texts she was "terrified" to say anything; and that she was "in so much pain . . . it's crazy."[3] We have no trouble concluding that SN KB was under the stress and excitement of the assault when she composed these text messages. The military judge therefore did not err by admitting them.

The appellant correctly points out that there was an apparent break in the text communications at issue here—a break sufficiently long that SN KB's phone provided a fresh time stamp of 12:28 pm when the conversation resumed. Even if we were to find that there was an insufficient foundation to admit these later texts as excited utterances, the error would be harmless. SN KB had already made it clear in her earlier texts that she had been sexually assaulted during the room inspection.

---

[3] PE 2 at 4.

**B. Ineffective assistance of counsel**

The appellant claims that his counsel were ineffective because they entered into a stipulation of expected testimony. We disagree.

The Sixth Amendment entitles criminal defendants to representation that does not fall "below an objective standard of reasonableness" in light of "prevailing professional norms." *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

We apply *Strickland*'s two-prong test to determine whether counsel rendered ineffective representation. To prevail on a claim of ineffective assistance of counsel, "an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687) (additional citation omitted). "The burden on each prong rests with the appellant challenging his counsel's performance." *United States v. Davis*, 60 M.J. 469, 473 (C.A.A.F. 2005).

The first prong requires the appellant to show that counsel's performance fell below an objective standard of reasonableness, indicating that counsel was not functioning as counsel within the meaning of the Sixth Amendment. *United States v. Terlep*, 57 M.J. 344, 349 (C.A.A.F. 2002). Our review of counsel's performance is highly deferential and is buttressed by a strong presumption that counsel provided adequate representation. *United States v. Garcia*, 59 M.J. 447, 450 (C.A.A.F. 2004).

Importantly to this case, "strategic choices made by trial defense counsel are 'virtually unchallengeable' after thorough investigation of the law and the facts relevant to the plausible options." *United States v. Akbar*, 74 M.J. 364, 371 (C.A.A.F. 2015) (quoting *Strickland*, 466 U.S. at 690-91).

As discussed, the parties stipulated that the appellant's roommate, had she been called, would have testified that SN KB met her in the laundry room the day of the assault, and told her that the appellant had sexually assaulted her. The appellant argues that this decision represents a lapse in representation so significant that it meets the requirements of *Strickland*.

Both lead and assistant trial defense counsel have submitted affidavits concerning their decision to stipulate to the expected testimony. The affidavits make clear that counsel entered into the stipulation for tactical reasons. The lead counsel, Commander JS, believed that the live testimony of the appellant's roommate would have been more damaging than the stipulation. By stipulating to the roommate's testimony, the defense limited the scope of the testimony, and avoided the introduction of additional testimony about SN KB's demeanor following the assault—testimony that, in counsel's view, would have been quite damaging.

Additionally, the stipulation presented information that tended to impeach SN KB's testimony that the third Sailor conducting inspections with the SN KB and the appellant witnessed some of the initial inappropriate physical contact. In the stipulation, the defense preserved the roommate's expected testimony that SN KB stated that this third Sailor saw the appellant touching SN KB during the room inspections, but did nothing to stop it. Defense counsel hoped to contradict this statement by SN KB and were partially successful at this during the trial. But this strategy depended, of course, on being able to present SN KB's statement as preserved in her roommate's stipulation.

In short, the trial defense counsel viewed the stipulation of expected testimony as a means of excluding potentially damaging testimony and preserving helpful testimony. This tactical decision is not so unreasonable as to represent a departure from the reasonable exercise of professional judgment expected of attorneys. We therefore find that the appellant has not met the first prong of the *Strickland* test.

### III. CONCLUSION

The findings and sentence are affirmed.

For the Court

R.H. TROIDL
Clerk of Court