# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM S32500**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Jason J. LUNDBY**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 23 April 2019

————————————

*Military Judge:* Christina M. Jimenez.

*Approved sentence:* Bad-conduct discharge, confinement for 6 months, forfeiture of $1,066.00 pay per month for 6 months, and reduction to E-1. Sentence adjudged 10 October 2017 by SpCM convened at Pope Army Airfield, Fort Bragg, North Carolina.

*For Appellant:* Major Meghan R. Glines-Barney, USAF; Major Rebecca J. Otey, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Dayle P. Percle, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, DENNIS, and LEWIS, *Appellate Military Judges.*

Judge DENNIS delivered the opinion of the court, in which Senior Judge JOHNSON and Judge LEWIS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

DENNIS, Judge:

A special court-martial consisting of a military judge sitting alone convicted Appellant, contrary to his pleas, of 18 specifications of fraud against the United

States, in violation of Article 132, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 932.[1] The military judge sentenced Appellant to a bad-conduct discharge, confinement for six months, forfeiture of $1,066.00 pay per month for six months, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

We address three issues in our review of Appellant's case: (1) whether Appellant's trial defense counsel were ineffective by failing to address key issues with the Government's witness and by failing to provide information to explain Appellant's theory of defense; (2) whether the erroneous admission of nonjudicial punishment pursuant to Article 15, UCMJ, 10 U.S.C. § 815 (Article 15), warrants relief; and (3) whether the delay in post-trial processing warrants relief.[2] We find no prejudicial error and affirm the findings and sentence.

## I. BACKGROUND

Appellant was assigned to Pope Army Airfield, Fort Bragg, North Carolina, where he was a frequent visitor to the two Army and Air Force Exchange Service (AAFES) facilities, commonly referred to as the North Post Exchange (North PX) and the South Post Exchange (South PX).

At some point in 2015, AAFES customer service personnel began reporting unusual activity to the loss prevention department. Specifically, they reported that Appellant was returning multiple high-dollar items for refund. Over the course of the following year, the loss prevention department began tracking Appellant's in-store and online transactions. Their investigation revealed that Appellant would place an order through the AAFES website and then present the receipt to return the item in-person at the North or South PX. Shortly after making the in-person return, often within less than an hour, Appellant would present the same receipt to return an identical item to the other PX. The source of the second item Appellant returned was unknown.

Appellant was convicted of having made 18 fraudulent claims, each time presenting the same AAFES online-order receipt for two separate returns. In total, Appellant was refunded approximately $6,871.18 more than the amount he purchased through AAFES.

---

[1] Appellant was also acquitted of one specification of fraud against the United States in violation of Article 132, UCMJ.

[2] Appellant asserts the issue of ineffective assistance of counsel pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). The court *sua sponte* addresses the issue regarding the admission of Appellant's Article 15.

## II. DISCUSSION

### A. Ineffective Assistance of Counsel

Appellant asserts that his trial defense counsel were ineffective by (1) failing to address key issues with the Government's witness and (2) failing to provide information to explain Appellant's theory of defense. We disagree.

#### 1. Additional Facts

The Government called only one witness in its case against Appellant—KB, the AAFES Loss Prevention Manager. KB testified as to how she became aware of Appellant's transactions and explained the documentation for each of the alleged fraudulent claims. Upon cross-examination, she testified that she was not present for the transactions and that the customer service representatives did not always follow the appropriate protocol when processing the refunds. The Defense did not put on a case. Just before closing arguments, the military judge asked Appellant whether it was his "personal decision not to testify" to which Appellant responded "Yes, ma'am."

In the Government's closing argument, trial counsel articulated its proof for each of the elements of the charged offenses: (1) that Appellant presented a claim for payment to a person with authority to pay the claim; (2) that Appellant did so by presenting a fraudulent receipt for an online AAFES order; and (3) that Appellant knew the claim was false or fraudulent. In arguing the third element, the Government pointed to the timing of the returns (within an hour of each other), the locations of the returns (at different PXs within close proximity of each other), and the use of different addresses as evidence that Appellant knew he was presenting a fraudulent claim. The Defense's closing argument focused on the Government's failure to produce the actual receipts and the "real possibility" that Appellant legitimately purchased and returned the items in question.

#### 2. Law and Analysis

This court reviews claims of ineffective assistance of counsel de novo. *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009) (citations omitted). When reviewing such claims, we follow the two-part test outlined by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Mazza*, 67 M.J. at 474. In applying this standard to military courts-martial, the United States Court of Appeals for the Armed Forces (CAAF) has noted that "[i]n order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361–62 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687; *Mazza*, 67 M.J. at 474).

We first address Appellant's claim that his counsel failed to address key issues with the Government's witness. Both Appellant and trial defense counsel submitted declarations regarding the defense theory and strategy at trial. Appellant's declaration alleges that his trial defense counsel failed to question KB on the fact that she "was never in attendance of these transactions" and that his unit address was in the AAFES system due to Appellant's government account. We need not rely on the declarations submitted by his counsel in response because Appellant's allegation is not supported by the record. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997) (holding that a post-trial evidentiary hearing is not required if the record as a whole compellingly demonstrates the improbability of the facts alleged). During cross-examination, trial defense counsel inquired into both of these matters with KB. Trial defense counsel's decision not to belabor these points was a smart one in light of KB's effective use of her responses to each question as an opportunity to further outline Appellant's scheme. *See United States v. MacCulloch*, 40 M.J. 236, 239 (C.M.A. 1994) (citing American Bar Association Standard 4–5.2(b) (1993)) (acknowledging that defense counsel are responsible for making strategic and tactical decisions). We find no merit to this allegation.

We next address Appellant's claim that his counsel failed to provide information to explain his theory of defense. As part of this claim, Appellant asserts that his counsel improperly influenced his decision not to testify. Appellant claims that, had he testified, he could have provided additional information to rebut KB's testimony, namely, his assertion on appeal that the returns "were done in succession due to a[n] efficient routine [Appellant] would use for spending limited amounts of time conducting a return as well as browsing for purchases." Again, his claim is unsupported by his own acknowledgement at trial that he made a "personal decision not to testify." There is nothing prohibiting counsel from making a recommendation to their client on whether to testify. The testimony Appellant proffers on appeal would not have contradicted KB's testimony since Appellant does not contest that he made the first return at one PX and the second return at another. Rather, Appellant's proffered testimony would merely explain why his actions did not demonstrate Appellant's knowledge that the claim was fraudulent. There are two problems with this argument. First, Appellant's use of two different PXs was not the only evidence the Government introduced to prove that Appellant knew his claim was fraudulent. Second, had Appellant testified, the Government would have likely introduced other evidence in rebuttal, such as the adverse actions that Appellant received for stealing and that were reflected in his record of derogatory data. Under these circumstances, it is likely that Appellant's testimony would have been more hurtful than helpful to his case. His counsel gave sage advice in recommending he not testify. There are no set rules covering the wide spectrum of decisions a trial defense counsel must make in a given case, but to have

been ineffective the counsel's performance must have resulted in prejudice. *Strickland*, 466 U.S. at 692. We find no prejudice here.

Accordingly, we deny Appellant's claims of ineffective assistance of counsel.

## B. Admission of Appellant's Article 15

We now turn to an issue not raised by Appellant: whether the military judge committed plain error by admitting an Article 15 more than five years old. We find error but no prejudice.

### 1. Additional Facts

Appellant's case was referred to trial on 24 August 2017. More than six and a half years earlier, he received an Article 15 for one specification of attempting to steal a pair of sunglasses from the base exchange and one specification of stealing a pair of sunglasses from the base exchange in violation of Articles 80 and 121, UCMJ, 10 U.S.C. §§ 880, 921. Appellant received nonjudicial punishment of forfeiture of $200.00 pay per month for two months, 14 days of extra duty, a reprimand, and a suspended reduction of one grade.[3]

In the Government's presentencing case-in-chief, trial counsel introduced Appellant's derogatory data, which included several letters of counseling and reprimand, an administrative demotion action, and the Article 15, documented on an Air Force Form 3070A, *Record of Nonjudicial Punishment Proceedings (AB thru TSgt)*, dated 31 January 2011. Trial defense counsel initially objected to the Article 15's admission because it did not identify who certified it as a true copy but later withdrew the objection when trial counsel referenced a previously-provided letter certifying all of Appellant's derogatory data. Trial counsel also introduced Appellant's nine enlisted performance reports, one of which referenced the Article 15 and stated that Appellant "displayed [a] lack of integrity by stealing from the Base Exchange." Trial defense counsel did not object to their admission. There being no objection, the military judge admitted each of the Government's sentencing exhibits.

### 2. Law and Analysis

Failure to object to the admission of sentencing evidence forfeits review of the issues absent plain error. *United States v. Eslinger*, 70 M.J. 193, 197–98 (C.A.A.F. 2011) (citations omitted). To establish plain error, Appellant must prove: "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Marsh*, 70 M.J. 101,

---

[3] Appellant's reduction in grade was suspended for a period of six months in accordance with *Manual for Courts-Martial, United States* (2008 ed.), pt. V, ¶ 6a(2). There is no record that the suspension was vacated during the six-month period.

104 (C.A.A.F. 2011) (quoting *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007)).

Rule for Courts-Martial (R.C.M.) 1001(b)(2) allows admission of "disciplinary actions including punishments under Article 15" that are "made or maintained in accordance with departmental regulations." At the time of Appellant's court-martial, the relevant departmental regulation governing the use of Article 15s in courts-martial was found in Air Force Instruction (AFI) 51–201, *Administration of Military Justice* (6 Jun. 2013). It provided, in relevant part, that "[r]ecords of punishment under Article 15, UCMJ, from any file in which the record is properly maintained by regulation, may be admitted if not over 5 years old on the date the charges were referred." AFI 51–201, ¶ 8.13.2. It further provided that the time period is measured "from the date the commander notified the accused of the commander's intent to impose nonjudicial punishment." *Id.*

Appellant's Article 15 is dated 31 January 2011 and the charges were referred on 24 August 2017—a difference of 6 years, 6 months, and 24 days. It is, and has long been, black letter law in the Air Force that, with certain narrow exceptions not applicable here, an Article 15 more than five years old is not admissible under R.C.M. 1001(b)(2).[4] We find that the military judge erred in admitting Appellant's Article 15 from 2011 and that the error was plain. We next turn to the issue of prejudice.

Because the error involved the admission of sentencing evidence, we tested for material prejudice by considering whether the error "substantially influenced the adjudged sentence." *United States v. Griggs*, 61 M.J. 402, 410 (C.A.A.F. 2005) (citation omitted). In doing so, we specifically considered the Article 15's underlying charge of larceny and its particular relationship to the crimes of which Appellant was convicted. Notably, the Article 15 and the underlying charge of larceny were referenced in Appellant's 2011 enlisted performance report and thus would have been made known to the military judge. *See United States v. Harrow*, 65 M.J. 190, 200 (C.A.A.F. 2007) (noting that an error in admitting evidence is likely to be harmless when the evidence would not provide any new ammunition). A 2016 letter of reprimand issued to Appellant for being arrested and charged with larceny by civilian authorities was also before the military judge. The Government briefly referenced the Article 15 during its sentencing argument but did so only in conjunction with all of Ap-

---

[4] Air Force Regulation 111–1, *Military Justice Guide* (9 Mar. 1990), the predecessor to AFI 51–201, contained an identical provision prohibiting the use of records of punishment under Article 15 that were more than five years old. *See United States v. Edwards*, 39 M.J. 528, 529 (A.F.C.M.R. 1994).

pellant's derogatory data in an effort to explain Appellant's lack of rehabilitation potential. In light of the seriousness of Appellant's crimes involving thousands of dollars in fraudulent claims along with other evidence properly before the military judge, we do not find that the erroneously admitted Article 15 resulted in material prejudice to Appellant and thus do not grant relief on this issue.

## C. Post-trial Processing Delay

Where a case is not docketed within 30 days of the convening authority's action, we apply the presumption of unreasonable post-trial delay established by the CAAF in *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). Here, it took 34 days for Appellant's case to be docketed with the court. Appellant asks us to "decline to affirm significant portions" of his sentence because of the four-day delay. We are not persuaded to do so.

We review de novo whether Appellant's due process rights were violated because of post-trial delay. *Id.* at 135 (citations omitted). In conducting our analysis, we have considered the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530–32 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (citations omitted). "[These] four factors are balanced, with no single factor being required to find that post-trial delay constitutes a due process violation." *Id.* at 136 (citing *Barker*, 407 U.S. at 533) (additional citation omitted).

After applying the *Barker* factors, we conclude that the four-day delay, while presumptively unreasonable, was adequately explained by the record.[5] Action was taken just 58 days after trial, well within the required 120-day period. Final modifications to the record took place over the course of an extended holiday period, and the record of trial spent 11 days in transit before being docketed with the court. In light of these particular circumstances, we find that the Government acted with reasonable diligence in the post-trial processing of Appellant's case.

Turning to the final *Barker* factor, prejudice, we note that Appellant identifies no prejudice resulting from the delay, and we perceive none. Where, as here, there is no discernible prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United*

---

[5] The Government successfully moved to attach an affidavit from the staff judge advocate and an affidavit from the Military Justice Division (JAJM) of the Air Force Legal Operations Agency, both of which provided further information about the post-trial processing of Appellant's case.

*States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). We recognize that "[d]elays involving this essentially clerical task . . . is 'the least defensible of all' post-trial delays," *Moreno*, 63 M.J. at 137 (quoting *United States v. Dunbar*, 31 M.J. 70, 73 (C.M.A. 1990)), but we do not find that the four-day delay between action and docketing is so egregious as to impugn the fairness and integrity of the military justice system.

Recognizing our authority under Article 66(c), UCMJ, 10 U.S.C. § 866(c) (2016), we have also considered whether relief for excessive post-trial delay is appropriate in this case even in the absence of a due process violation. *See United States v. Tardif,* 57 M.J. 219, 223–25 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude it is not. On the whole, the processing of Appellant's case has not been subjected to excessive post-trial delay, and we perceive no substantial harm to Appellant, prejudice to the interests of justice or discipline, or erosion of this court's ability to conduct our review or grant appropriate relief that would move us to modify an otherwise fitting sentence.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c) (2016). Accordingly, the approved findings and sentence are **AFFIRMED**.[6]

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[6] We note several errors in the promulgating order. First, the Charge is incorrectly listed as Charge I. Second, each of the listed 19 specifications refers to "*the* Army and Air Force Exchange Service cashier" instead of "*an* Army and Air Force Exchange Service cashier." Third, the date the sentence was adjudged is identified as 9 October 2017 instead of 10 October 2017. We direct the publication of a corrected court-martial order to remedy the errors.